

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

JMG: USAO2018R0230

2019 DEC 18  PM 3: 46

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Northern Division)

BY_____ DEPUTY

| | |
|---|---|
| UNITED STATES OF AMERICA | ) CRIM. NO. RDB-19-0600 |
| | ) |
| v. | ) (Conspiracy to Commit Wire Fraud, |
| | ) 18 U.S.C. § 1349; Wire Fraud, 18 |
| JOSEPH EDWARD LIBERTO, | ) U.S.C. § 1343; Forfeiture Allegation, |
| | ) 18 U.S.C. § 981(a)(1)(C) & 28 U.S.C. |
| Defendant. | ) § 2461(c)) |
| | ) |

## INDICTMENT

The Grand Jury for the District of Maryland charges that:

## COUNT ONE
### (Conspiracy to Commit Wire Fraud)

### INTRODUCTORY ALLEGATIONS

### Relevant Persons and Entities

At all times relevant to this Indictment:

1.      The United States Postal Service ("the Postal Service" or USPS) was an independent agency of the executive branch of the United States government that was responsible for providing postal service in the United States.

2.      EMCOR Facilities Service, Inc. (EMCOR), which conducted business under the name of the EMCOR Customer Solutions Center (CSC), was a corporation that maintained its principal places of business in Phoenix, Arizona and Norristown, Pennsylvania.   EMCOR was in the business of acting as an agent or clearing house responsible for receiving service calls for needed repair work or alterations on its customers' facilities and then assigning those to service providers (SPs); reviewing and

approving proposals submitted by the SPs for performing the requested work; monitoring the SP's performance of the work; and then receiving the final invoice from the SP and processing it for payment. EMCOR's customers included both government agencies and private companies and entities. Starting in or about 2006, EMCOR entered into a contractual relationship with the Postal Service whereby it agreed to act as its agent for the performance of the functions listed above.

3.     The EMCOR-CSC was responsible for assigning work orders for repairs to its clients' facilities; monitoring the timely performance of the repairs; and approving proposals and paying invoices received from companies it hired to perform repair work. The EMCOR-CSC's main offices were located in Phoenix, Arizona, while the conduct of repair work and alterations on Postal Service facilities located in the states of Maryland, Virginia, the District of Columbia, North Carolina, and Pennsylvania was primarily overseen by USPS personnel in offices located in Greensboro, North Carolina; Indianapolis, Indiana; and West Columbia, South Carolina.

4.     Sierra Construction, LLC ("Sierra" or "the company"), was a construction service company that conducted its business from offices located at 3535 Urbana Pike, Frederick, Maryland 21704 and 5340 Spectrum Drive, Suite I, Frederick, Maryland 21703. Sierra Construction began doing business in 1997. Starting in or about November 2010, Sierra became an SP to the Postal Service by entering into a series of contractual agreements with the EMCOR-CSC whereby it agreed to provide repair services to USPS facilities initially located within 200 miles (and starting in January 2016, within 400 miles) of Frederick, Maryland or zip code 21704, including the states of Maryland, Virginia, Delaware, West Virginia, Pennsylvania, and North Carolina.

5.    **JOSEPH EDWARD LIBERTO ("JOSEPH LIBERTO")** was the

President of Sierra.  Among **JOSEPH LIBERTO**'s functions and responsibilities as

President were the oversight and management of work assigned to Sierra by EMCOR for

the Postal Service and other EMCOR clients and oversight of Sierra's direct contractual

relationship with the Postal Service through direct buy and Job Order Contract (JOC)

work orders.  **JOSEPH LIBERTO** also oversaw Sierra's performance on individual

EMCOR work orders issued on behalf of the Postal Service, either managing the entire

job himself or routinely providing guidance and instructions  to Sierra employees known

as project managers (PMs) with regard to the selection of subcontractors and the

negotiation of prices with them as to materials and labor costs, and the submission of

job estimates and final invoices to EMCOR.  **JOSEPH LIBERTO** also in many

instances either personally developed and submitted Sierra's quote or proposal on

particular assigned work orders to EMCOR, or he reviewed and adjusted the quotes or

proposals prepared by Sierra's PMs before they were submitted to EMCOR for repair

work on behalf of the Postal Service.

### The Subcontractor Disclosure Requirements and Charging Limitations Established by the EMCOR/Sierra Contracts

6.    Commencing at least as early as November 2010, Sierra entered into a

series of contracts known as supplier agreements with the EMCOR-CSC whereby the

company agreed to perform repair work on Postal Service facilities subject to certain

terms, conditions, and requirements.  Among other things, these contracts specified:

- the labor rates that would be paid by EMCOR and the Postal Service
  for particular labor classifications (such as General Foreman,
  Foreman, Tradesman, and Apprentice or Laborers) or trade/service
  classifications (such as HVAC, Electrical, Overhead Doors, Lighting,
  Lock & Key, Plumbing and Signs and Flags);

3

- the maximum allowable mark-ups for materials (20%) and equipment rental (20%);

- the allowable amounts that would be paid for trip charges to analyze the repair or maintenance issue identified in the work order, and to perform the necessary repairs;

- the time period within which Sierra had to respond and complete needed repairs, based upon the priority level assigned by EMCOR (from Level P5 [highest and most urgent] to Level P1 [lowest and least urgent]).

7.     The contractual relationship between Sierra and the EMCOR-CSC continued until December 2018. During the course of their contractual relationship, Sierra and the EMCOR-CSC periodically executed new contracts governing the terms and conditions of their relationship. This occurred in April 2012; April 2013; January 2016; and June 2018. **JOSEPH LIBERTO**, in his capacity as the President of Sierra, signed each of these contracts on its behalf.

8.     Starting with the updated EMCOR-CSC Supplier Agreement concluded between it and Sierra in April 2013, each subsequent contract included a number of provisions relating to the use of subcontractors by an SP such as Sierra on repair projects assigned to it by the EMCOR-CSC. For example, the EMCOR/Sierra contract executed in April 2013 included the following statement in bold-faced type on the first full page of the agreement that was specifically made applicable to work performed on Postal Service facilities:

> **If the work is subcontracted (USPS only), subcontractor's invoice(s) must be attached to provider's invoice. A copy of the fully itemized invoice that shows labor rates, labor hours, total workers on location, itemized materials, and a full description of the work. If this is not provided, the invoice will be rejected back until EMCOR secures this information. A subcontractor's quote cannot be used as an invoice. Support must be an actual invoice provided by subcontractor.**

4

**USPS only allows specific mark-ups on subcontractor invoices. The format is as follows:**

- $0 - $500 - $50 flat markup
- $501 - $1000 - $100 flat markup
- Above $1000 – 10% markup

This information was then repeated on page 7 of the EMCOR/Sierra contract signed in April 2013 with the further warning that "Invoices deviating from these requirements will NOT be processed for payment until the problem has been resolved to the Customer Solutions Center's satisfaction."

9.      The contract executed between EMCOR and Sierra in April 2013 limited mark-ups on materials and rented equipment to Cost + 20%. It also provided that trip charges were to be billed at $75 per trip if within a radius of 25-50 miles from the SP's location; $100 if 50-75 miles from the SP's location; and $125 if 75-100 miles from the SP's location.

10.     The EMCOR/Sierra contract executed in April 2013 further required Sierra to identify the types of construction and repair services that it was capable of providing. Of the 21 categories listed, Sierra placed "X's" representing that it provided the indicated service next to all but two of them. In fact, Sierra relied heavily upon locating and hiring subcontractors to provide many of the services listed, including HVAC, glass repair, fencing, door repair, electrical, plumbing, locksmith, painting, and paving jobs.

11.     The EMCOR/Sierra contract executed in April 2013 further required Sierra to specify the geographic area within which it could provide service. Sierra represented that its base location was Frederick, Maryland; that it could provide service itself in Maryland, the District of Columbia, Pennsylvania, Delaware, Virginia, and West

5

Virginia; and that it had "Nationwide Coverage" but that in "States outside our coverage area we will sub-contract". In truth and in fact, Sierra routinely subcontracted work on Postal Service jobs arising within all six of the jurisdictions in which it represented that it could itself provide service.

12.    The April 2013 EMCOR/Sierra contract was signed by **JOSEPH LIBERTO** directly beneath the following certifications, which appeared in bold-faced type:

> **Supplier hereby agrees to and accepts the foregoing terms and conditions.**
>
> **Supplier certifies and warrants that the responses provided to the Qualification Questionnaire are true and that Supplier is in compliance with the above stated Performance Standards.**

13.    In mid-November 2015, EMCOR-CSC issued a new and significantly more detailed supplier agreement (EMCOR-CSC SM Supplier Agreement 11-17-2015) which was signed by **JOSEPH LIBERTO** on behalf of Sierra on January 8, 2016. Page 1 of the Agreement contained the following statements in bold-faced type:

> **If the work is subcontracted (USPS only) by Supplier, Supplier's invoice must include the subcontractor's invoice that shows labor rates, labor hours, total workers on location, itemized materials, and a full description of the work. If this is not provided, the invoice will be rejected until such information is delivered. A subcontractor's quote cannot be used as an invoice. Support must be an actual invoice provided by subcontractor.**
>
> **USPS only allows specific mark-ups on subcontractor invoices found in Performance Standards Attachment.**

Defendant **JOSEPH LIBERTO**'s initials appear directly beneath this statement and on every page of the agreement.

14.     With respect to repair jobs that were performed by Sierra's own employees ("self-perform jobs"), under the heading "Compensation and Labor Rates Structure," pages 1 and 2 of the agreement signed in January 2016 provided that Sierra's rates on jobs it handled itself were to be based upon a table that set forth the Standard Hourly Rate, and Overtime and Sunday/Holiday Rates, for 27 different Trade/Service Classifications that Sierra represented were services it was able to perform. The contract further provided that these rates "shall be deemed to cover all costs" unless the work order expressly provided otherwise.

15.     Page 2 of the agreement signed in January 2016 included the same 20% limitation on mark-ups for materials and equipment rentals and the same allowable trip charges that were included in the contract signed in April 2013. **JOSEPH LIBERTO**'s initials appear at the bottom of this page.

16.     On page 3 of the January 2016 agreement, in regard to Sierra's service area, the contract required Sierra to "provide the Radius in miles that your company can provide service from your base location(s). Please designate in what areas your work will be Self-Performed and in what areas it may be Subcontracted." Sierra indicated that the zip code of its base city was 21704 (southeast Frederick, Maryland and other areas along I-270), and that it could cover jobs within a 400 mile radius of that location. In response to the further question, "Will you Self-Perform or Subcontract in this area?", Sierra responded, "Self-Perform." **JOSEPH LIBERTO**'s initials appear at the bottom of this page.

17.     On page 14 of the January 2016 agreement, it expressly stated that the "Required documents supporting invoices sent to customer for approval" included "subcontractor's invoice (if applicable)" for all invoices between $0 and $2,000.00, as

well as "receipts for any material components that exceed $500 in individual value."
**JOSEPH LIBERTO**'s initials appear at the bottom of this page.

18.     Under the "Compensation and Rate Structure" section of the contract signed in January 2016, on page 15 of the agreement, it stated in bold-faced type that **"Markups for subcontracted efforts invoicing shall be as follows:**

- **$0.00 to $500.00 no more than $50 markup**
- **$501.00 $15,000.00 no more than 10% mark up"**

**JOSEPH LIBERTO**'s initials appear at the bottom of this page.

19.     The Sierra/EMCOR contract signed in January 2016 also provided for the first time that all external service providers (which included Sierra) must submit their invoices electronically through the Invoice Management Portal (IMP).  Invoices entered into the IMP were reviewed by EMCOR personnel in Phoenix, Arizona and Norristown, Pennsylvania.  **JOSEPH LIBERTO**'s initials appear at the bottom of this page.

20.     The January 2016 EMCOR/Sierra contract was signed by **JOSEPH LIBERTO** directly beneath the following certifications, which appeared in bold-faced type:

> **Supplier hereby agrees to and accepts the foregoing terms and conditions.**
>
> **Supplier certifies and warrants that the responses provided to the Qualification Questionnaire are true and that Supplier is in compliance with this Agreement.**

21.     In early April 2017, EMCOR-CSC issued a new and significantly more detailed supplier agreement (EMCOR-CSC & Viox Services Combined SP Supplier Agmt 04-3-17) which was signed by **JOSEPH LIBERTO** on behalf of Sierra on June 6, 2018. On page 2 of this agreement, Sierra again represented that it would "Self-Perform" all projects assigned to it within 400 miles of zip code 21703 in the same six jurisdictions

identified in the previous contract. At the bottom of page 2, the agreement again

provided that

> **If the work is subcontracted (USPS only) by Supplier, Supplier's invoice must include the subcontractor's invoice that shows labor rates, labor hours, total workers on location, itemized materials, and a full description of the work. If this is not provided, the invoice will be rejected until such information is delivered. A subcontractor's quote cannot be used as an invoice. Support must be an actual invoice provided by subcontractor.**

**JOSEPH LIBERTO**'s initials appear immediately below this text at the bottom of this

page.

22.     On page 6 of the agreement signed in June 2018, which is a page entitled

**"Invoicing – EMCOR Customer Solutions Center,"** the following language

appears as part of the list of what must be clearly indicated by supplier invoices:

> If the work is subcontracted (USPS only), subcontractor's invoice(s) showing labor rates, labor hours, total workers on location, itemized materials, and a full description of work must be attached to Supplier's invoice. If this is not provided, the invoice will be rejected back until the EMCOR Customer Solutions Center secures this information. A subcontractor's quote cannot be used as an invoice. Support must be an actual invoice provided by subcontractor. Invoices deviating from these requirements will NOT be processed for payment until the problem has been resolved to the EMCOR Customer Solutions Center's satisfaction.

**JOSEPH LIBERTO**'s initials appear below this text at the bottom of this page.

23.     Page 16 of the agreement signed in June 2018 included the same language

relating to subcontractor's invoices under "Required documents supporting invoices"

that is quoted in ¶ 17 above, and page 18 of the June 2018 agreement included the same

language relating to "Markups for sub-contracted efforts invoicing" that is quoted in ¶

18 above. **JOSEPH LIBERTO**'s initials appear at the bottom of each of these pages.

24.     With regard to jobs that were self-performed by Sierra, the Sierra/EMCOR contract signed in June 2018 provided a list of specified hourly rates for 30 different Trade/Service Classifications on page 3 and also stated on page 2 that these rates "shall be deemed to cover all costs" unless the work order expressly provided otherwise.

25.     Exhibit D at page 21 of the Sierra/EMCOR contract signed in June 2018, which is entitled "Interactive Voice Response (IVR) System Implementation," stated that "it is REQUIRED that Service Providers utilize the IVR with regard to all Work Orders dispatched. . . . For Each Work Order it is REQUIRED to 'Check-In' upon arrival at the site allowing for accurate reporting of work and response time." **JOSEPH LIBERTO**'s initials appear at the bottom of the page.

26.     The June 2018 EMCOR/Sierra contract was signed by **JOSEPH LIBERTO** directly beneath the following certifications, which appeared in bold-faced type:

> **Supplier hereby agrees to and accepts the foregoing terms and conditions.**
>
> **Supplier certifies and warrants that the responses provided to the Qualification Questionnaire are true and that Supplier is in compliance with this Agreement.**

27.     Throughout the period from April 2013 through December 31, 2018, Sierra transmitted the proposals it prepared in response to work orders issued to it by EMCOR-CSC, and the final invoices for those assignments to EMCOR-CSC, by means of emails from its offices in Frederick, Maryland to EMCOR-CSC's offices in Phoenix, Arizona and Norristown, Pennsylvania respectively.

## THE SCHEME TO DEFRAUD

28. From at least in or about April 2013, and continuing thereafter until on or about November 29, 2018, in the District of Maryland and elsewhere, the defendant,

### JOSEPH LIBERTO,

together with certain other co-schemers known and unknown to the members of the Grand Jury, did knowingly devise and intend to devise a scheme and artifice to defraud EMCOR and the Postal Service as to material matters, and to obtain and attempt to obtain by means of materially false and fraudulent pretenses and representations, money and property of the Postal Service, in an amount in excess of $2 million, more or less (hereafter "the scheme to defraud").

## THE CONSPIRACY

29. From at least in or about April 2013, and continuing thereafter until on or about November 29, 2018, in the District of Maryland and elsewhere, the defendant,

### JOSEPH LIBERTO,

did knowingly and willfully conspire, combine, confederate, and agree with other co-conspirators known and unknown to the members of the Grand Jury, to commit wire fraud, that is, to knowingly execute and attempt to execute the scheme to defraud through the use of interstate wires in violation of Title 18, United States Code, Section 1343.

### The Objects of the Conspiracy

30. The objects of the conspiracy were:

(a) to enable Sierra to substantially increase its revenues from repair projects assigned to it by the EMCOR-CSC by hiding from EMCOR personnel that it was using

the services of subcontractors on many of these projects, thereby enabling Sierra to submit bills for its supposed services at rates that were both far in excess of the amount the subcontractor or subcontractors were charging it, and also far in excess of the specified mark-up that would otherwise have been allowed under Sierra's contract with EMCOR-CSC;

(b)     to cover up and hide from EMCOR personnel the fact that Sierra was frequently using the services of subcontractors in order to perpetuate the continuation of the scheme by means of false representations, omissions, and other forms of deceptive and misleading conduct; and

(c)     on jobs assigned through the EMCOR-CSC that Sierra self-performed, to overcharge for its services by fraudulently inflating the number of labor hours used to complete the work and by fraudulently marking up the cost of the materials used in completing its assigned work on these jobs.

## The Manner and Means of the Conspiracy

31.     The manner and means by which the defendant and his co-conspirators sought to accomplish the purposes of the conspiracy included, among other things, the following:

a.     It was a part of the conspiracy to defraud that **JOSEPH LIBERTO** fraudulently misrepresented or caused to be misrepresented Sierra's repair capabilities or its intent to self-perform projects involving HVAC, glass repair, fencing, door repair, electrical work, plumbing work, repair and replacement of locks, and paving jobs, among others, and did not disclose that it intended to and regularly did rely upon

subcontractors to carry out many types of repair jobs within its geographic service area, in the successive contracts that it executed with EMCOR between 2013 and 2018.

      b.    It was further a part of the conspiracy to defraud that **JOSEPH LIBERTO** hid Sierra's use of subcontractors on the repair projects assigned to it by EMCOR by not disclosing its use of subcontractors on the proposals and invoices that it submitted to EMCOR, and by not providing the estimates or invoices that Sierra had received from the subcontractors it hired to perform the repair services assigned to it as required when it submitted proposals and invoices to EMCOR.

      c.    It was further a part of the conspiracy to defraud that **JOSEPH LIBERTO** instructed and caused other Sierra employees to instruct subcontractors that they should not leave copies of their proposals, estimates, or invoices with postal employees at the facilities where they performed their repair work, nor transmit those to the employees at EMCOR or the Postal Service who were identified in the work orders.

      d.    It was further a part of the conspiracy to defraud that **JOSEPH LIBERTO** instructed Sierra PMs to submit fraudulent equipment receipts from non-existent equipment rental companies to EMCOR along with its invoices that appeared to reflect that Sierra had rented large pieces of equipment such as bucket trucks or lifts to perform the work on projects assigned to it by EMCOR, whereas, in truth and in fact, Sierra had simply hired subcontractors who already possessed the necessary equipment and who did not bill it separately for the use of their existing equipment, instead billing only for the time of the technicians responsible for operating the equipment.

      e.    It was further a part of the conspiracy to defraud that **JOSEPH LIBERTO** falsely added trip fees to proposals and invoices in connection with repair projects assigned to Sierra, and instructed and caused Sierra's PMs to do the same, on

projects where no Sierra employees actually traveled to the postal facility in connection with the initial assessment or completion of the assigned repair work.

      f.     It was a further a part of the conspiracy to defraud that **JOSEPH LIBERTO** falsely increased labor hours and material costs on work which was self-performed by Sierra, and instructed and caused Sierra's PMs to do the same.

      g.     It was a part of the conspiracy to defraud that **JOSEPH LIBERTO** instructed, and caused other Sierra employees to instruct subcontractors whom it had hired to perform repair projects assigned to it by EMCOR, that they should not themselves call EMCOR's IVR line after the work had been completed, but instead should leave that to be done by Sierra employees, in an effort to conceal Sierra's use of subcontractors from personnel at EMCOR.

18 U.S.C. § 1349

## COUNTS TWO THROUGH THIRTY-ONE
### (Wire Fraud)

1.    The allegations of paragraphs 1 through 27 of Count One are realleged and incorporated here by reference, and constitute a scheme and artifice to defraud as described in paragraph 28 of Count One ("the scheme to defraud").

2.    On or about the dates set forth below, in the District of Maryland and elsewhere, the defendant,

### JOSEPH LIBERTO,

for the purpose of executing the aforesaid scheme to defraud, together with certain co-schemers known and unknown to the members of the Grand Jury, did transmit and cause to be transmitted by means of wire communication in interstate commerce writings, signs, signals, and sounds, namely:

| COUNT | DATE OF WIRE TRANSMISSION | DESCRIPTION OF WIRE TRANSMISSION |
|---|---|---|
| 2 | February 22, 2016 | A Sierra invoice in the amount of $1,898.70 that did not disclose the use of a subcontractor who charged Sierra $875.00 to carry out repair work on gutters at a Postal Service facility located in Laurel, Maryland (Job # 2440132/32731406), which was transmitted by means of electronic mail from Sierra's offices in Frederick, Maryland through the EMCOR Invoice Management Portal (IMP) for review and approval by EMCOR staff located in Norristown, Pennsylvania |
| 3 | March 12, 2016 | A Sierra invoice in the amount of $1,168.40 that did not disclose the use of a subcontractor who charged Sierra $158.67 to carry out the retracking and lubrication of a lift cable on an overhead dock door at a Postal Service facility located in Dulles, Virginia (Job # 35277735), which was transmitted by means of electronic mail from Sierra's offices in Frederick, Maryland through the EMCOR Invoice Management Portal (IMP) for review and approval by EMCOR staff located in Norristown, Pennsylvania |

| 4 | March 15, 2016 | A Sierra invoice in the amount of $1,824.00 that did not disclose the use of a subcontractor who charged Sierra a total of $1,050.00 to carry out repairs on a keypad at the back door at a Postal Service facility located in Centreville, Virginia (Job # 32777738), which was transmitted by means of electronic mail from Sierra's offices in Frederick, Maryland through the EMCOR Invoice Management Portal (IMP) for review and approval by EMCOR staff located in Norristown, Pennsylvania |
| 5 | April 13, 2016 | A Sierra invoice in the amount of $3,163.60 that did not disclose the use of a subcontractor who charged Sierra $2,100.00 to carry out the repair of a dock door airbag and an edge leveler at a Postal Service facility located in Washington, D.C. on Brentwood Avenue (Job # 32900277), which was transmitted by means of electronic mail from Sierra's offices in Frederick, Maryland through the EMCOR Invoice Management Portal (IMP) for review and approval by EMCOR staff located in Norristown, Pennsylvania |
| 6 | June 8, 2016 | A Sierra invoice in the amount of $8,910.34 that did not disclose the use of a subcontractor who charged Sierra $5,790.00 to carry out plumbing repairs at a Postal Service facility located in Capitol Heights, Maryland (Job # 32898671), which was transmitted by means of electronic mail from Sierra's offices in Frederick, Maryland through the EMCOR Invoice Management Portal (IMP) for review and approval by EMCOR staff located in Norristown, Pennsylvania |
| 7 | June 22, 2016 | A Sierra invoice in the amount of $2,450.00 that did not disclose the use of a subcontractor who charged Sierra $1,439.87 to carry out repair of two dock lifts at a Postal Service facility located in Gainesville, Virginia (Job # 32978774), which was transmitted by means of electronic mail from Sierra's offices in Frederick, Maryland through the EMCOR Invoice Management Portal (IMP) for review and approval by EMCOR staff located in Norristown, Pennsylvania |

| 8 | October 6, 2016 | A Sierra invoice in the amount of $9,219.40 that did not disclose the use of a subcontractor who charged Sierra $6,500.00 to carry out the replacement of the fence around the left ramp of the loading dock at a Postal Service facility located in the Nottingham area of Baltimore, Maryland (Job # 33305631), which was transmitted by means of electronic mail from Sierra's offices in Frederick, Maryland through the EMCOR Invoice Management Portal (IMP) for review and approval by EMCOR staff located in Norristown, Pennsylvania |
| :-: | :-- | :-- |
| 9 | October 21, 2016 | A Sierra invoice in the amount of $1,674.28 that did not disclose the use of a subcontractor who charged Sierra $950.00 to carry out repair of a broken window in the postmaster's office at a Postal Service facility located in Annapolis, Maryland (Job # 33609075), which was transmitted by means of electronic mail from Sierra's offices in Frederick, Maryland through the EMCOR Invoice Management Portal (IMP) for review and approval by EMCOR staff located in Norristown, Pennsylvania |
| 10 | October 27, 2016 | A Sierra invoice in the amount of $1,836.40 that did not disclose the use of a subcontractor who charged Sierra $210.00 to carry out reinstalling the chains on a flagpole at a Postal Service facility located in the Georgetown neighborhood of Washington, D.C. (Job # 33590713), which was transmitted by means of electronic mail from Sierra's offices in Frederick, Maryland through the EMCOR Invoice Management Portal (IMP) for review and approval by EMCOR staff located in Norristown, Pennsylvania |
| 11 | November 11, 2016 | A Sierra invoice in the amount of $2,326.00 that did not disclose the use of a subcontractor who charged Sierra $1,087.31 to carry out repairs to the front doors at a Postal Service facility located in College Park, Maryland (Job # 33508495), which was transmitted by means of electronic mail from Sierra's offices in Frederick, Maryland through the EMCOR Invoice Management Portal (IMP) for review and approval by EMCOR staff located in Norristown, Pennsylvania |

| 12 | November 17, 2016 | A Sierra invoice in the amount of $9,446.98 that did not disclose the use of a subcontractor who charged Sierra $5,000.00 to carry out exterior and interior painting and touch-up work at a Postal Service facility located in Covington, Virginia (Job # 33438136), which was transmitted by means of electronic mail from Sierra's offices in Frederick, Maryland through the EMCOR Invoice Management Portal (IMP) for review and approval by EMCOR staff located in Norristown, Pennsylvania |
| --- | --- | --- |
| 13 | January 3, 2017 | A Sierra invoice in the amount of $1,414.60 that did not disclose the use of a subcontractor who charged Sierra $430.82 to carry out the replacement of several 40' pole lights at a Postal Service facility located in Gaithersburg, Maryland  (Job # 33711551), which was transmitted by means of electronic mail from Sierra's offices in Frederick, Maryland through the EMCOR Invoice Management Portal (IMP) for review and approval by EMCOR staff located in Norristown, Pennsylvania |
| 14 | January 16, 2017 | A Sierra invoice in the amount of $4,036.92 that did not disclose the use of a subcontractor who charged Sierra $1,801.81 to carry out removal and replacement of fencing in the loading dock area at a Postal Service facility located on Fayette Street in Baltimore, Maryland (Job # 33638612), which was transmitted by means of electronic mail from Sierra's offices in Frederick, Maryland through the EMCOR Invoice Management Portal (IMP) for review and approval by EMCOR staff located in Norristown, Pennsylvania |
| 15 | February 3, 2017 | A Sierra invoice in the amount of $4,236.00 that did not disclose the use of a subcontractor who charged Sierra $2,461.00 to provide seals and insulating material for dock doors at a Postal Service facility located in Dulles, Virginia (Job # 33939106), which was transmitted by means of electronic mail from Sierra's offices in Frederick, Maryland through the EMCOR Invoice Management Portal (IMP) for review and approval by EMCOR staff located in Norristown, Pennsylvania |

| 16 | February 13, 2017 | A Sierra invoice in the amount of $3,000.40 that did not disclose the use of a subcontractor who charged Sierra $1,995.00 to carry out replacement of lights and ballast on a workroom floor at a Postal Service facility located in Sudlersville, Maryland (Job # 33898240), which was transmitted by means of electronic mail from Sierra's offices in Frederick, Maryland through the EMCOR Invoice Management Portal (IMP) for review and approval by EMCOR staff located in Norristown, Pennsylvania |
| 17 | January 12, 2018 | A Sierra invoice in the amount of $1,887.00 that did not disclose the use of a subcontractor who charged Sierra $587.50 to carry out the replacement of a wire in a thermostat at a Postal Service facility located in the Anacostia area of Washington, D.C. (Job # 35075963), which was transmitted by means of electronic mail from Sierra's offices in Frederick, Maryland through the EMCOR Invoice Management Portal (IMP) for review and approval by EMCOR staff located in Norristown, Pennsylvania |
| 18 | January 24, 2018 | A Sierra invoice in the amount of $1,301.00 that did not disclose the use of a subcontractor who charged Sierra $135.00 to thaw out a frozen pipe at a Postal Service facility located in Betterton, Maryland (Job # 35078304), which was transmitted by means of electronic mail from Sierra's offices in Frederick, Maryland through the EMCOR Invoice Management Portal (IMP) for review and approval by EMCOR staff located in Norristown, Pennsylvania |
| 19 | February 19, 2018 | A Sierra invoice in the amount of $1,867.40 that did not disclose the use of a subcontractor who charged Sierra $412.04 to carry out the replacement of a light near the front gate at a Postal Service facility located in Brooklyn/Cherry Hill, Maryland (Job # 35177568), which was transmitted by means of electronic mail from Sierra's offices in Frederick, Maryland through the EMCOR Invoice Management Portal (IMP) for review and approval by EMCOR staff located in Norristown, Pennsylvania |

| 20 | February 20, 2018 | A Sierra invoice in the amount of $5,762.92 that did not disclose the use of a subcontractor who charged Sierra $1,510.08 to carry out replacement of defective exterior lighting at a Postal Service facility located in Alexandria, Virginia (Job # 35080237), which was transmitted by means of electronic mail from Sierra's offices in Frederick, Maryland through the EMCOR Invoice Management Portal (IMP) for review and approval by EMCOR staff located in Norristown, Pennsylvania |
| --- | --- | --- |
| 21 | March 15, 2018 | A Sierra invoice in the amount of $1,867.00 that fraudulently overstated the allowable charge of $853.28, more or less, for self-performed repair work by Sierra on a scissor lift leaking hydraulic fluid at a Postal Service facility located in Thurmont, Maryland (Job # 35262800), which was transmitted by means of electronic mail from Sierra's offices in Frederick, Maryland through the EMCOR Invoice Management Portal (IMP) for review and approval by EMCOR staff located in Norristown, Pennsylvania |
| 22 | March 27, 2018 | A Sierra invoice in the amount of $6,628.40 that did not disclose the use of a subcontractor who charged Sierra a total of $3,601.50 to carry out the replacement of pole lights in a parking lot at a Postal Service facility located in Silver Spring, Maryland (Job # 35036031), which was transmitted by means of electronic mail from Sierra's offices in Frederick, Maryland through the EMCOR Invoice Management Portal (IMP) for review and approval by EMCOR staff located in Norristown, Pennsylvania |
| 23 | April 23, 2018 | A Sierra invoice in the amount of $8,724.33 that did not disclose the use of two subcontractors who together charged Sierra a total of $4,600.00 to carry out repairs to a door, arched window unit, and adjoin portions of wall that had been damaged by a roof leak at a Postal Service facility located in Warrenton, Virginia (Job # 35381594), which was transmitted by means of electronic mail from Sierra's offices in Frederick, Maryland through the EMCOR Invoice Management Portal (IMP) for review and approval by EMCOR staff located in Norristown, Pennsylvania |

| 24 | April 24, 2018 | A Sierra invoice in the amount of $1,329.28 that fraudulently overstated the allowable charge of no more than $317.28, more or less, for self-performed repair work by Sierra that consisted of removing a weathered sign at a Postal Service facility located in Hampton, ~~Maryland~~ (Job # 35469809), which was transmitted by means of electronic mail from Sierra's offices in Frederick, Maryland through the EMCOR Invoice Management Portal (IMP) for review and approval by EMCOR staff located in Norristown, Pennsylvania |
| --- | --- | --- |
| 25 | May 1, 2018 | A Sierra invoice in the amount of $5,513.60 that did not disclose the use of a subcontractor who charged Sierra $3,500.00 to carry out the repair of a broken and eroded strip of pavement in the employee parking lot of a Postal Service facility located in Camp Hill, Pennsylvania (Job # 35381257), which was transmitted by means of electronic mail from Sierra's offices in Frederick, Maryland through the EMCOR Invoice Management Portal (IMP) for review and approval by EMCOR staff located in Norristown, Pennsylvania |
| 26 | July 25, 2018 | A Sierra invoice in the amount of $757.80 that did not disclose the use of a subcontractor who charged Sierra $411.71 to carry out repairs to a dock door at a Postal Service facility located in Waldorf, Maryland (Job # 35775539), which was transmitted by means of electronic mail from Sierra's offices in Frederick, Maryland through the EMCOR Invoice Management Portal (IMP) for review and approval by EMCOR staff located in Norristown, Pennsylvania |
| 27 | July 31, 2018 | A Sierra invoice in the amount of $9,397.40 that did not disclose the use of a subcontractor who charged Sierra $5,100.00 to carry out repairs to a sump pump in the basement of a Postal Service facility located in Catonsville, Maryland (Job # 35817347), which was transmitted by means of electronic mail from Sierra's offices in Frederick, Maryland through the EMCOR Invoice Management Portal (IMP) for review and approval by EMCOR staff located in Norristown, Pennsylvania |

| 28 | August 3, 2018 | A Sierra invoice in the amount of $7,344 that did not disclose the use of a subcontractor who charged Sierra $3,723.40 to carry out the replacement of shattered glass doors at a Postal Service facility located in Washington, D.C. [Ben Franklin Station] (Job # 35469754), which was transmitted by means of electronic mail from Sierra's offices in Frederick, Maryland through the EMCOR Invoice Management Portal (IMP) for review and approval by EMCOR staff located in Norristown, Pennsylvania |
| --- | --- | --- |
| 29 | September 17, 2018 | A Sierra invoice in the amount of $5,107.20 that did not disclose the use of a subcontractor who charged Sierra $3,860.00 to carry out repair of exterior glass doors at a Postal Service facility located in Washington, D.C. (Lamond/Riggs facility) (Job # 35878242), which was transmitted by means of electronic mail from Sierra's offices in Frederick, Maryland through the EMCOR Invoice Management Portal (IMP) for review and approval by EMCOR staff located in Norristown, Pennsylvania |
| 30 | September 18, 2018 | A Sierra invoice in the amount of $486.00 that did not disclose the use of a subcontractor who charged Sierra $116.50 to carry out the repair of an air conditioning unit at a Postal Service facility located in Swanton, Maryland (Job # 35982676), which was transmitted by means of electronic mail from Sierra's offices in Frederick, Maryland through the EMCOR Invoice Management Portal (IMP) for review and approval by EMCOR staff located in Norristown, Pennsylvania |
| 31 | September 20, 2018 | A Sierra invoice in the amount of $7,324.64 that did not disclose the use of a subcontractor who charged Sierra a total of $4,663.74 to carry out the repair of a pipe leak in a maintenance room at a Postal Service facility located in Harrisonburg, Virginia (Job # 35982503), which was transmitted by means of electronic mail from Sierra's offices in Frederick, Maryland through the EMCOR Invoice Management Portal (IMP) for review and approval by EMCOR staff located in Norristown, Pennsylvania |

18 U.S.C. § 1343
18 U.S.C. § 2

## FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further finds that:

1.      Pursuant to FED. R. CRIM. P. 32.2, notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853, and 28 U.S.C. § 2461(c), in the event of the defendant's conviction on this Indictment.

## Wire Fraud Forfeiture

2.      Upon conviction of the offenses set forth in Counts Two through Thirty-One, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), the defendant,

### JOSEPH LIBERTO,

shall forfeit to the United States any and all assets and property, real or personal, that constitutes or is derived from proceeds traceable to such offenses, including but not limited to a money judgment in the amount of the proceeds the defendant obtained from his wire fraud scheme.

## Substitute Assets

3.      If, as a result of any act or omission of the defendant, any of the property described above as being subject to forfeiture:

   a.      cannot be located upon the exercise of due diligence;

   b.      has been transferred or sold to, or deposited with, a third person;

   c.      has been placed beyond the jurisdiction of the Court;

   d.      has been substantially diminished in value; or,

   e.      has been commingled with other property which cannot be subdivided without difficulty,

the United States, pursuant to 21 U.S.C. § 853(p), shall be entitled to forfeiture of

substitute property up to the value of the forfeitable property described above.

18 U.S.C. § 981(a)(1)(C)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)


_Robert K. Hur (by MM)_
ROBERT K. HUR
UNITED STATES ATTORNEY
FOR THE DISTRICT OF MARYLAND

A TRUE BILL:

SIGNATURE REDACTED

Foreperson

Date: December _18_, 2019

24