**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

*Jefferson M. Gray*
*Assistant United States Attorney*
*Jefferson.M.Gray@usdoj.gov*

*Suite 400*
*36 S. Charles Street*
*Baltimore, MD 21201-3119*

*DIRECT: 410-209-4915*
*MAIN: 410-209-4800*
*FAX: 410-962-3091*

June 22, 2021

The Hon. Richard D. Bennett
United States District Court Judge
Chambers 5D
U.S. Courthouse
101 W. Lombard Street
Baltimore, Maryland  21201

                Re:    *United States v. Joseph Liberto*
                        Crim. No. RDB-19-0600

Dear Judge Bennett:

    I am writing, with the consent of defense counsel, to advise you of the parties' agreement, subject to the Court's approval, concerning a contact between defense counsel and a represented witness.

    The following facts are not in dispute, except where described as the assertion of one party or another. Witness A was a long-time employee of Sierra Construction (Sierra), the business of which Mr. Liberto was the 50 percent owner and President. In the spring of 2019, Witness A was contacted by government investigators and asked to respond to their questions. Sierra agreed to pay Witness A's legal fees and arranged for Witness A to retain attorney Paul Kemp of Rockville. The government interviewed Witness A on March 20, 2019, and he testified before the grand jury on April 10, 2019, with Mr. Kemp representing him. Sierra had paid for Mr. Kemp to act as Witness A's counsel, but after Witness A testified before the grand jury and before the case was indicted in December 2019, Sierra stopped paying the legal fees of its employees. Mr. Liberto's current lead defense counsel, Martin Himeles, did not represent Mr. Liberto and had no involvement in the matter at the time of those events.

    Mr. Himeles was retained in December 2019, a week before the indictment was returned. In February 2020, as part of pretrial discovery, the government produced, among other things, a report of Witness A's March 20, 2019 interview. The report mentioned that Mr. Kemp and an associate from his firm, identified only by first name (which was a female name), had represented Witness A during the interview. Witness A's grand jury transcript has not yet been produced. Mr. Himeles was aware that Sierra had paid for Mr. Kemp to act as Witness A's counsel for a period of time but had stopped paying fees of counsel for witnesses before the case was indicted. Mr. Himeles was also aware that there was a billing dispute before Mr. Himeles' engagement and Mr. Kemp had not been paid the full amount of his bills as of mid-2019, nor had he been paid anything since.

The government considers Witness A to be an extremely important witness in this matter. In March 2021, the government contacted Mr. Kemp concerning its desire to call Witness A at the upcoming trial in July. Mr. Kemp advised the government that he would accept service of the trial subpoena and would represent Witness A in connection with his trial testimony. Mr. Himeles was unaware of these communications.

In late May, Mr. Himeles sought to interview Witness A. Mr. Himeles knew that Mr. Kemp had represented Witness A during the investigation two years earlier but asserts that he believed the representation had ended then, when Sierra had discontinued payment of Witness A's fees. He also knew that there was an unpaid balance for legal fees owed to Mr. Kemp, and that Sierra had not paid any other bills from Mr. Kemp or from any other lawyer for Witness A during that period.

On the afternoon of Wednesday, May 19th, Mr. Himeles called Mr. Kemp for the purpose of confirming his understanding that Mr. Kemp no longer represented Witness A. He did not reach Mr. Kemp and left a voicemail asking him to return the call. Mr. Kemp called back that same evening and left a voicemail indicating that he was returning Mr. Himeles's call. Mr. Himeles returned the call a short time later and left a voicemail asking Mr. Kemp to return his call. In neither of his voicemails did Mr. Himeles explain what he was calling about, and Mr. Kemp did not connect these calls to his representation of Witness A. There were no further calls between Mr. Kemp and Mr. Himeles during the next six days.

On Monday, May 24th, the Court convened a call with counsel and reached an agreement to move up the start date of the trial to Wednesday, July 7th. At about noon on Wednesday, May 26th, Mr. Himeles and his paralegal called Witness A. When Mr. Himeles reached Witness A, he introduced his paralegal and advised Witness A that they represented Mr. Liberto and wanted to ask him some questions about the case. Mr. Himeles did not ask Witness A whether Mr. Kemp was still representing him.

The government was subsequently advised by Witness A that the connection with the woman on the line (Mr. Himeles's paralegal) was poor and patchy, and that he mistakenly understood that she was the other attorney from Mr. Kemp's office who had assisted in his representation. Witness A advised the government that he therefore believed the call had been approved by his attorneys and responded to Mr. Himeles's questions. The government acknowledges that it has no reason to believe that Mr. Himeles did not identify himself and his paralegal as representing Mr. Liberto, or that he was aware of the witness's difficulty hearing portions of the call or his mistaken understanding about who the woman was.

The interview lasted roughly ninety minutes, until eventually something that was said prompted Witness A to say that he would have to consult with Mr. Kemp concerning that. At that point, Mr. Himeles stated that he did not know that Mr. Kemp

2

still represented Witness A and immediately terminated the call. He then called both Mr. Kemp and the government's counsel and reported what had occurred.

The parties disagree concerning whether Mr. Himeles's actions constituted a violation of Rule 19-304.2(a) of the Maryland Attorneys' Rules of Professional Conduct, which applies in this Court pursuant to Rule 704 of the Court's Local Rules. The government contends that Mr. Himeles's direct contact of Witness A violated Rule 4.2, as informed by Comment 7 to the Rule (which provides that "[t]he prohibition on communications with a represented person applies only if the attorney has actual knowledge that the person in fact is represented in the matter to be discussed," and that "Actual knowledge may be inferred from the circumstances."). *See also* Md. R. 19-301.0(g) ("'Knowingly,' 'known,' or 'knows' denotes actual knowledge of the fact in question. A person's knowledge may be inferred from circumstances."). Mr. Himeles maintains that he did not believe that Witness A was then represented by counsel, and he did not have "actual knowledge" of the representation as is required to establish a violation of the Rule. *See* Md. R. 19-301.0(g). (Mr. Himeles does regret that he did not reach Mr. Kemp or ask Witness A whether he was represented at the outset of the interview.)

Notwithstanding that disagreement, the parties have agreed to the following resolution, subject to the Court's approval, which would obviate the need for the Court to resolve this issue.

1. Defense counsel agrees that in the coming trial, the defense will not seek to introduce, quote, or make direct use of any statements that Witness A made during the interview on May 26th. In addition, defense counsel will not mention the interview, or this agreement, during his examination of Witness A or at any other time in the jury's presence.

2. Government counsel agrees that it will not mention defense counsel's interview of Witness A, or this agreement, during its examination of him or at any other time in the jury's presence. Before Witness A testifies, the government will caution him against referring to the interview during his testimony unless something occurs that would require him to do so, given his oath as a witness to tell the truth.

The agreement required Mr. Liberto's consent. Mr. Himeles recommended that Mr. Liberto consult with separate counsel, which Mr. Liberto did. Mr. Liberto has accepted and consented to this resolution. The parties have further agreed that this agreement is not an admission by Mr. Himeles of a violation of Rule 4.2, or by the government that there was no violation of Rule 4.2.

3

The parties acknowledge that this agreement is not binding on Your Honor. If Your Honor should reject the agreement, the parties will be free to make any arguments concerning the resolution of this matter that they deem to be in the interests of their clients. The parties suggest that this matter be resolved at the motions hearing now scheduled for Thursday, June 24th, at 11:00 a.m.

                                      Very Truly Yours,

                                      Jefferson M. Gray

cc:   Martin S. Himeles, Jr., Esq.