

Martin S. Himeles, Jr.

PARTNER
mhimeles@zuckerman.com
410.949.1144

June 22, 2021

**VIA ECF**

The Honorable Richard D. Bennett
United States District Court Judge
U.S. Courthouse
101 W. Lombard Street, Chambers 5D
Baltimore, Maryland 21201

      Re:    *United States v. Joseph Liberto*, Crim. No. RDB-19-0600

Dear Judge Bennett:

      We write to bring to the Court's attention a significant issue that came to our attention yesterday regarding the government's discovery production, because the issue will unavoidably affect the current trial date and may well affect the government's ability to proceed in this case.

      Yesterday, the government advised defense counsel that the copies of the "job files" of Sierra Construction, LLC ("Sierra") that are the subject of the 31 substantive counts in the Superseding Indictment, which were produced to us in March of 2020, are incomplete. Mr. Gray explained that during the past week, as he worked with the government's trial exhibits (which the parties are scheduled to exchange this Friday, June 25), he began to have concerns that some documents in the job files for the substantive counts were not included in the government's trial exhibits. This led him and the government's trial team, including the case agent, Postal Inspector Baer, to review more closely the job files that were produced last March to determine whether they were complete. They were not. Moreover, the government has not yet determined whether 37 other job files also produced last March, which the government identified as the non-indictment job files most likely to be trial exhibits, were complete.

      As of yesterday, Mr. Gray was unable to say how many documents had not been produced. Our defense in this case has been built around the job files that have been produced, which we now know were incomplete  and we also have serious questions whether the government will ever be able to establish that they have

produced a complete set of the job files in the same order and condition as when they were first seized by the government during the execution of a search warrant on November 29, 2018.

By way of background, the Superseding Indictment charges Mr. Liberto with one count of conspiracy to commit wire fraud and 31 substantive counts of wire fraud arising from what the government contends was overbilling of the United States Postal Service (the "Postal Service"), through its agent, EMCOR Facilities Services, Inc. ("EMCOR"), for construction and maintenance jobs performed by Sierra, Mr. Liberto's company. Each of the 31 substantive counts of the Superseding Indictment corresponds to one of the more than 8,000 jobs Sierra performed for the Postal Service through EMCOR. For each of the 31 counts, the government contends that the corresponding job file proves that Sierra concealed or misrepresented its use of subcontractors and the extent of its own work in order to inflate the amount of proposals and invoices it submitted to EMCOR.

The job files are thus at the heart of the government's evidence, but they are equally important to the defense. We cannot defend against the allegations in the Superseding Indictment without understanding their evidentiary basis, but beyond that, the job files are filled with exculpatory evidence establishing that Sierra employees performed work not taken into account by the government and other evidence of the reasonableness and accuracy of Sierra's proposals and invoices.

The job files produced last March were the second version we received. That raised concerns on our part as to their completeness, which we raised as early as October of last year, in my letter to government counsel dated October 22, 2020. By letter dated December 8, 2020, Mr. Gray assured us that, "the copies of files that were produced to you on March 23rd consist of complete copies of the indicted files." The letter concluded, "You therefore should not be missing any papers from any of the job files that relate to the indictment's individual substantive counts, or to the other jobs that are most likely to the subject of the government's evidence at trial, at least as we see it at this time." We now know that this was not accurate.

While the government does not believe that the missing documents are significant (a conclusion they reached the government has reached before they were able to tell us *which* documents were missing), we are entitled to determine what is significant for Mr. Liberto's defense. It has long been apparent that the government's view of what is and what is not significant is far different than ours. Our investigation of the facts and preparation for trial has been based on these documents. We analyzed each of the job files for the 31 substantive counts and for the 37 other job files identified by the government, searched for other documents that related to these jobs,

developed our defenses to each substantive count, determined how we would address the remaining job files the government identified as possible trial exhibits, and evaluated which of these other job files we would use at trial if the government did not. We also determined what other documents would be necessary to establish facts that the job files do not address but that are important to Mr. Liberto's defense. We have questioned witnesses about these jobs, using or based on the job files produced by the government.

There are other reasons for concern about the completeness and admissibility of these documents. We have known for some time that the government prepared its grand jury exhibits by copying only the documents from the job files that it considered significant, and ordering them chronologically. We had no reason to believe that the order of the original documents had been disturbed until this month. In a June 8 conversation with government counsel, we learned for the first time that the government intended to reorder the contents of the job files chronologically in its trial exhibits. But the job files were not maintained so neatly as a chronological presentation would suggest, and their order has evidentiary significance. Moreover, the files are admissible, if at all, only as business records—as they were maintained by Sierra in the ordinary course of business. In response to our objection to a chronological reordering of the job file contents, the government has now confirmed that it cannot replicate the order of the documents in these critical files at the time they were seized from Sierra, and the best it can do is to use the job files in whatever their order happens to be now, after the government has worked with them for almost three years.

Finally, regarding the job files for 37 other jobs produced last March that the government may offer as trial exhibits, Mr. Gray has advised that the government will review the completeness of the copies of these job files produced to us, but it is prioritizing the files related to the substantive counts. While Mr. Gray advises that the government will only be using roughly four or five of those 37 other job files, that is hardly comforting. We have analyzed and investigated the government's allegations concerning all of the files and questioned witnesses concerning some of them. We will very likely use some of them if the government does not. Needless to say, we cannot begin to respond to the government's allegations concerning the job files it intends to use, and those we may want to use in our defense, without having complete copies.

Apart from the obvious concerns we have about our ability to prepare for trial and effectively represent our client, this recent disclosure raises a separate question: given the state of the record, how can the government establish that any of these job files are admissible? No witness can testify to the completeness of these job files; they

are three to five years old and concern 67 of more than 8,000 jobs that Sierra performed for the Postal Service. The contents of the job files as maintained by Sierra varies. Some included extensive records of work by Sierra employees—records that may not exist anywhere else. Others have no records of such work, but have photographs or other information from which it is possible to determine that Sierra employees did substantial work. And still others include no evidence of work by Sierra employees, even when independent evidence establishes that Sierra employees worked on the job. The only way to establish that these files are complete is through testimony concerning their seizure and subsequent maintenance, and what we have now learned, together with what we know already on that subject, will call into question any such testimony.

For example, in February 2020, Ms. Shelton and I reviewed the original files seized by the government at the offices of the Postal Inspection Service in Bethesda. The original job files that relate to the substantive counts and the other 37 job files that the government may use as exhibits were not available there; government counsel had them by that point. But the job files for thousands for other jobs, including roughly 2,600 other jobs the government contends were fraudulently inflated, were stored there, and we surveyed them and arranged for them to be scanned for further review. During our visit, we observed numerous irregularities.

Agent Baer had removed documents from boxes and files that identified where they were found during the search of Sierra and did not know in which box they belonged, or believed they belonged in numbered boxes that did not exist; he had documents in his office in mislabeled and unlabeled envelopes and folders; he referred to photographs on his phone taken during the search of Sierra to identify documents; and there were other irregularities that raised questions about the integrity of the documents. We also learned from Agent Baer in another meeting concerning discovery that some subcontractors voluntarily produced documents, Agent Baer determined that they were mainly invoices that were already in job files, and he shredded them. Still other records were returned to a subcontractor because Agent Baer did not consider them relevant.

The job files corresponding to the substantive counts and the other 37 files the government might use at trial, although they had been moved to government counsel's office, were seized by Agent Baer during the search of Sierra, along with the thousands of other documents in Bethesda. He had custody of these key files from the time they were seized until they were provided to government counsel. We believe that he reviewed them and many other files in the first instance, identified those that he thought should be reviewed by government counsel, and only then provided them

to counsel. Before these key files were ever provided to government counsel, their contents may have been reordered, shuffled, or misplaced.

Taking these facts together with what we learned yesterday, we believe that it will be impossible for the government to establish that the job files on which its case is based are complete files, as they were maintained in the ordinary course of Sierra's business. But these facts are the predicate the government must establish for the Court to admit the job files in evidence. Unless the government is prepared to proceed without these files, we believe that before the trial begins, the Court should hold an evidentiary hearing to determine whether the government can meet its burden to establish a foundation for the admissibility of the job files for the substantive counts, and any other job files the government intends to use. If the Court finds that the government has somehow met its burden, these matters would still be the subject of trial testimony, so that the jury could consider them in evaluating the evidence. But empaneling a jury and proceeding to trial without a preliminary determination by the Court would risk a ruling that excludes much of the government's key evidence after opening statements are presented and witnesses are examined based on evidence that will never be admitted.

Finally, and regrettably, the concerns raised by these unfortunate developments unavoidably affect the trial date. Mr. Liberto wants to proceed to trial and to reclaim his reputation and his life. We were prepared to proceed to trial on July 7 before we learned that we do not have complete copies of evidence on which the government's case is based. We cannot try the case until we have that evidence and an opportunity to examine it; to question witnesses about it; to incorporate it in our defense; and to obtain a ruling concerning its admissibility after a hearing scheduled sometime before trial. It is impossible to accomplish these tasks along with the other myriad things the defense needs to accomplish before trial, which include the exchange of trial exhibits, the receipt and review of Jencks material, and the preparation of jury instructions in the remaining two weeks before trial.

Finally, as I was about to send this letter, we received a letter from Mr. Gray with a new production of what the government contends are the complete job files for the substantive counts, which total almost 400 pages. The government's cover letter identifies roughly 25 new pages, which come from numerous files. We have only just begun to review these supposedly complete files, but it is already clear that they raise more questions than they answer. The version of the Count 3 job file produced today is ten pages and includes one page not in the prior versions. But the version of this job file produced last March included 13 pages. It appears that the latest "complete" job file has gained one new page and lost 4 pages. The completeness of the other 37 key job files remains unaddressed.

We will be prepared to address these and other issues at Thursday's hearing.

        Respectfully,

        */s/ Martin S. Himeles, Jr.*

        Martin S. Himeles, Jr.

cc:    Counsel of record (via ECF)