## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Criminal No. RDB-19-0600 |
| JOSEPH EDWARD LIBERTO, | * | |
| Defendant. | * | |
|  | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## AMENDED MEMORANDUM OPINION

Defendant Joseph Edward Liberto ("Liberto" or "Defendant") was originally charged in a 31-Count Indictment that was returned by the grand jury on December 18, 2019. (Indictment, ECF No. 1.) On April 1, 2021, Liberto was charged in a 32-count Superseding Indictment (the "Superseding Indictment"). (ECF No. 44[1].) These 32 Counts stem from an alleged wire fraud scheme whereby Liberto allegedly defrauded the United States Postal Service ("USPS") out of more than $2 million by causing his former company, Sierra Construction, LLC ("Sierra") to hide from EMCOR Facilities Services, Inc. ("EMCOR"), an agent for the USPS with which Sierra contracted, its use of subcontractors so that it could submit invoices that far exceeded the amount it paid to them. (*Id.*)

Now pending is the Defendant's Motion Addressing Legal Principles Governing Admissibility of Job File Exhibits (ECF Nos. 73, 74[2]). Also pending is a Letter filed by

---

[1] The Superseding Indictment was amended on June 25, 2021 to correct a clerical error in Count 32. (Amended Superseding Indictment, ECF No. 65.) On September 24, 2021, the Amended Superseding Indictment was further amended by interlineation to correct inexact language in Counts 2 through 32. (ECF No. 80.)

[2] Defendant filed a Corrected Motion (ECF No. 74) that simply corrects a citation to the Handbook of Federal Evidence. Accordingly, the Court treats these pending Motions (ECF Nos. 73, 74) as one and the same.

Defendant on September 26, 2021, which seeks sanctions against the Government under Federal Rule of Criminal Procedure 16, this Court's Scheduling Order, and *Brady v. Maryland*, 373 U.S. 83 (1963) for the Government's late production of 631 pages, including a newly produced February 2018 memorandum of interview of a Government-proffered witness, Gary Howser.  (ECF No. 83.)   Defendant has also filed a Letter objecting to the Court asking the jury venire's vaccination status during voir dire.  (ECF No. 84.)

After reviewing the parties' submissions, this Court conducted a Motions Hearing on September 27, 2021.  For the reasons stated on the record at the September 27, 2021 Motions Hearing and as supplemented below, Defendant's Motion Addressing Legal Principles Governing Admissibility of Job File Exhibits (ECF Nos. 73, 74) is DENIED WITHOUT PREJUDICE as to the authenticity of specific exhibits and DENIED as to the business records exception to the hearsay rule.  Defendant's September 26, 2021 Letter (ECF No. 83), construed as a Motion for Sanctions under Federal Rule of Criminal Procedure 16, this Court's Scheduling Order, and *Brady v. Maryland*, 373 U.S. 83 (1963) is GRANTED, and the Government is precluded from calling Gary Howser as a witness at trial and from introducing into evidence at trial the 631 pages from the Government's September 23, 2021 production, including the Howser Memorandum of Interview and Cumberland job files.  In addition, Defendant's objection to the Court's asking the jury venire's vaccination status during voir dire (ECF No. 84) is OVERRULED.

## BACKGROUND

The factual background of this case was discussed in detail in this Court's October 8, 2020 Memorandum Opinion denying Defendant's Motion to Dismiss.  (ECF No. 40.)   Of

relevance here, on June 22, 2021, on the eve of the July 7, 2021 trial date, Defendant filed a letter with the Court raising issues regarding the admissibility of certain job files that were incomplete based on a disclosure the Government made the day prior on June 21, 2021.  (ECF No. 58.)  The Government subsequently made a new production to the Defendant of what it represented to be the complete job files for the substantive counts. (ECF No. 59.)  The Court convened an on-the-record telephone conference on June 22, 2021, treated the Defendant's letter as a request for a postponement of the July 7, 2021 trial date, and postponed the trial to October 4, 2021.  (ECF No. 60.)

On August 16, 2021, Defendant filed a letter advising that he had concluded that the appropriate time to raise issues concerning the admissibility of the job file exhibits was at trial and that he had decided not to file a pretrial motion relating to the job files.  (ECF No. 68.)  However, the Government believed it would be preferable for the issue to be briefed, argued, and resolved prior to trial and requested a hearing on the matter.  (ECF No. 69.)  On August 23, 2021, the Court convened an off-the-record telephone conference to discuss scheduling and the parties' concerns regarding the admissibility of the job files at issue.  (ECF No. 72.)  The parties agreed that the Government would file its designation of the job files it intends to introduce in its case-in-chief by August 31, 2021.  The Court also set a briefing schedule as to the questions of the authenticity and admissibility of the job file exhibits and scheduled a Motions Hearing for September 27, 2021.  (*Id.*)  Defendant filed his Motion on September 15, 2021 (ECF Nos. 73, 74), and the Government filed its Opposition on September 21, 2021 (ECF No. 75.)  On September 22, 2021, after an off-the-record telephone call with counsel, this Court filed a Letter Order rescheduling the trial start date from Monday, October 4, 2021

to Tuesday, October 5, 2021.  (ECF No. 76.)  In addition, in response to the Defendant's objection to seating only jurors who are vaccinated against the COVID-19 virus, the Court ordered Defendant to file a brief with respect to asking the jury venire's vaccination status. (*Id.*)

On September 26, 2021, Defendant filed a Letter seeking sanctions against the Government under Federal Rule of Criminal Procedure 16, this Court's Scheduling Order, and *Brady v. Maryland*, 373 U.S. 83 (1963) for the Government's late production of 631 pages, including a newly produced February 2018 memorandum of interview of a Government-proffered witness, Gary Howser.  (ECF No. 83.)  The Government responded on September 27, 2021.  (ECF No. 85.)  Defendant also filed his brief objecting to the Court asking the jury venire's vaccination status during voir dure.  (ECF No. 84.)  The Court proceeded to the Motions Hearing as scheduled on September 27, 2021, followed by the Pretrial Conference.

## ANALYSIS

### I.   Defendant's Motion Addressing Legal Principles Governing Admissibility of Job File Exhibits (ECF Nos. 73, 74)

Defendant raises several legal issues regarding the authenticity and admissibility of 61 job file exhibits the Government seeks to introduce in its case-in-chief.  (ECF No. 74 at 3.) Specifically, Defendant argues that the Government will not be able to establish: (1) that the job file exhibits are authentic, (2) that they are business records, and (3) that the absence of evidence of certain work by Sierra in the job file exhibits is evidence that no such work was done.  For the reasons stated on the record at the September 27, 2021 hearing and for the reasons supplemented below, Defendant's Motion is DENIED WITHOUT PREJUDICE as

to the authenticity of specific exhibits and DENIED as to the business records exception to the hearsay rule.

## A. Evidence at Issue

When Postal Inspectors searched the business premises of Sierra Construction, LLC on November 29, 2018, they seized boxes of documents mostly consisting of what were referred to as Sierra "job files." Each job file pertained to specific construction and repair jobs performed by Sierra for the U.S. Postal Service. More than 3,500 of these files concern jobs dispatched by EMCOR Facilities Service, Inc., an agent of the Postal Service contracted for that purpose. Some job files were less than ten pages long and contained only invoices, proposals and other basic information, while others included email correspondence with EMCOR and the Postal Service, labor and expense records for Sierra employees, subcontractor employees, or both, and brochures for products that were installed in Postal Facilities, or considered for installation. (ECF No. 74 at 1.)

The Government has since identified 61 of these job files—32 that relate to the 31 substantive counts of the superseding indictment and 29 others—that it intends to offer as exhibits at trial. (ECF No. 74 at 2.) Defendant claims that after seizing the files and before using those on which it relied in its presentation to the grand jury, the Government's case agent, Special Agent Sean Baer of the U.S. Postal Service Office of Inspector General ("Agent Baer"), ordered the documents within those job files chronologically, selected from each file what the government considered to be the "key" documents, and marked these partial copies (including the file jackets) as grand jury exhibits. The Government produced those copies in February of 2020. (*Id.* at 2.) In March of 2020, the Government produced a second copy of

each of those job files that contained additional documents, as well as other job files identified as potential trial exhibits.

When Defendant inquired about the variations of the contents in the files, the Government represented that its March 2020 production included the complete files.  (ECF No. 74 at 2.)  In June of 2021, however, more than a year after their production, on the eve of the then-trial date, July 7, 2021, the Government determined that documents were missing from the copies that it had produced and represented to be complete in March 2020.  (ECF No. 58)  The Government represented that it discovered the previously uncopied pages during its trial preparation.  (ECF No. 59.)

The Court granted the Defendant's request for a postponement of the trial (ECF No. 60) and the Government produced *Jencks* material[3], which included the grand jury exhibits from Agent Baer's March 2021 testimony.  (ECF. No. 74 at 2.)  The Defendant asserts that contents of some of these files differed from the prior versions, including the versions used in obtaining the indictment.  Specifically, Defendant raises issues with the admission of 61 job file exhibits and argues that the Government will not be able to show: (1) that the job file exhibits are authentic under Fed. R. Evid. 901(a), (2) that they are business records under Fed. R. Evid. 803(6), and (3) that the absence of evidence of certain work by Sierra in the job file exhibits is evidence that no such work was done under Fed. R. Evid. 803(7).  The Government argues that all of the job file exhibits are easily authenticated and are admissible as business

---

[3] "In *Jencks v. United States*, 353 U.S. 657 (1957), the Supreme Court held that a criminal defendant has the constitutional right to inspect, for impeachment purposes, prior statements made to Government agents by Government witnesses.  Such statements must be produced, upon defendant's request, prior to cross-examination if their contents are related to the subject matter of the witness' direct.  *Id.* at 667-72."  1 Fourth Circuit Criminall Handbook § 52 (2021).  This holding was codified by the Jencks Act, 18 U.S.C. § 3500.

records.  The Government also states that it does not intend to argue that the lack of a record in a job file of work done by Sierra is conclusive evidence that no such work occurred under Rule 803(7).  (ECF No. 75 at 26.)  Accordingly, because the Court preliminarily finds the evidence both authentic and admissible as business records, it need not address the admissibility of the evidence under Rule 803(7).

### B.  Federal Rule of Evidence 901(a): Authenticating or Identifying Evidence

Federal Rule of Evidence 901(a) provides: "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901(a).  Fed. R. Evid. 901(b) contains a list of examples of evidence that satisfies the requirement of 901(a), including "testimony of a witness with knowledge," "nonexpert opinion about handwriting," and "distinctive characteristic and the like."  Fed R. Evid. 901(b).  The burden of establishing the authenticity of a particular document "is a light one."  *In re Intern. Management Associates*, 781 F.3d 1262, 1267 (11th Cir. 2015); *United States v. Vidacak*, 553 F.3d 344, 349 (4th Cir. 2009) ("The burden to authenticate under Rule 901 is not high - only a prima facie showing is required.").  All that is required is sufficient evidence so that a jury "could reasonably have concluded" that a document was authentic.  *In re Intern. Management Associates*, 781 F.3d at 1267.

The district court needs "only to satisfy itself that it was 'improbable that the original item had been exchanged with another or otherwise tampered with.'"  *United States v. Summers*, 666 F.3d 192, 201 (4th Cir. 2011) (further noting that "The district court's role is merely to act as a gatekeeper for the jury") (quoting *United States v. Jones*, 356 F.3d 529, 535 (4th Cir. 2004)).

After meeting the *prima facie* burden, the evidence may then be admitted, although the ultimate question of the authenticity of the evidence (or the weight to be given it) remains to be decided by the jury.  *United States v. Lebowitz*, 676 F.3d 1000, 1009 (11th Cir. 2012); *Vidacak*, 553 F.3d at 349.  A court's decision that a document is authentic must be sustained on appeal unless there is "no competent evidence in the record to support it."  *Lebowitz*, 676 F.3d at 1009.

In this case, the Court is satisfied that the 61 job files in question meet the Rule 901 authentication standard.  The absence of a few documents that were originally included in a company's file or files does not justify the exclusion of those files in their entirety.  *See United States v. Panza*, 750 F.2d 1141 (2d Cir. 1984); *United States v. Hathaway*, 798 F.2d 902, 907(6th Cir. 1986) ("The fact that records were missing or unavailable does not evidence a clear abuse of discretion in the district court's finding that the records were trustworthy.  Instead, it is an argument which best goes to the weight to be given that evidence.").  Under Rule 901(a), the Government simply must make a *prima facie* case that the job file exhibits are what they purport to be.  The testimony of either employees of Sierra, specifically Kevin Fink, Tammy Acha, Dennis Walter, and Mike Wineke, or Special Agent Baer, meets the standard of evidence "sufficient to support a finding that the item is what the proponent claims it is" in this case.

Rule 901(b)(1) makes it clear that the "testimony of a witness with knowledge" is sufficient to make the necessary showing under 901(a).  Based on the Government's proffer, it appears that both the employees and Special Agent Baer have the requisite knowledge about the job file exhibits to establish that they are in fact the Sierra job files.  The employees themselves worked with the files and in some instances actually wrote on them.  Special Agent Baer was present for the seizure of the files and has reviewed EMCOR, Postal, and Sierra

records.  As such, both the employees and Special Agent Baer have the necessary knowledge to authenticate the job file exhibits.  Likewise, both the employees and Special Agent Baer will likely be able to identify the job files as Sierra files by their distinctive characteristics such as the writings on the file covers.  *See* Fed. R. Evid. 901(b)(4).

To be sure, Defendant is free to make specific objections as to the authenticity of any exhibit to the extent he argues that the exhibit is not what it purports to be, notwithstanding the Court's ruling that the re-ordering of documents within a given file does not render the file inauthentic.  Defendant is also free to cross-examine the witnesses about whether the files as presented are exactly as they were when they were stored at Sierra's office.  Accordingly, the Defendant's Motion (ECF Nos. 73, 74) is **DENIED WITHOUT PREJUDICE** as to the authenticity of specific exhibits.

### C. Federal Rule of Evidence 803(6): Exceptions to the Hearsay Rule (Business Records)

Defendant argues that the job files in question do not qualify as business records in the form the Government intends to admit them.  The requirements of the business records exception are:

> (A) the record was made at or near the time by - or from information transmitted by - someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business;
> (C) making the record was a regular practice of that activity;
> (D) all of these first three conditions are shown by the testimony of a custodian or another qualified witness, or by a certificate that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> (E) the opponent does not show that the source of the information or the circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6); see also *In re Intern. Management Associates, LLC*, 781 F.3d at 1267.

9

Under Rule 803(6)(D), all that is required of "another qualified witness" is that "the witness understands the system used to prepare the records." *Conoco, Inc. v. Dept. of Energy,* 99 F.3d 387, 391 (Fed. Cir. 1996); *Wallace Motor Sales, Inc. v. American Motor Sales Corp.*, 780 F.2d 1049, 1061 (1st Cir. 1985). "The term 'qualified witness' is broadly construed.'" *United States v. Jones*, 522 Fed. App'x 204, 207 (4th Cir. Aug. 4, 2015) (citing *United States v. Franco*, 874 F.2d 1136 (7th Cir. 1989); *United States v. Dominguez*, 835 F.2d 694 (7th Cir. 1987); *United States v. Duncan*, 919 F.2d 981 (5th Cir. 1990)).

Law enforcement agents are regularly permitted to testify as "qualified" witnesses under Rule 803(6)(D).  See, e.g., *United States v. Hathaway*, 798 F.2d 902, 906 (6th Cir. 1986) (allowing FBI agent to testify as "another qualified witness" because "there is no reason why a proper foundation for application of Rule 803(6) cannot be laid, in whole or in part, by the testimony of a government agent or other person outside the organization whose records are sought to be admitted"); *United States v. Franco*, 874 F.2d 1136, 1138 (7th Cir. 1989) (narcotics agent who conducted search of money exchange business and spoke to its owner and an employee about the manner in which they kept the records was a "qualified witness" who could authenticate the business's records); *United States v. Coffman*, 574 Fed. Appx. 541, 556 (6th Cir. 2014) (Assistant U.S. Attorney who subpoenaed and received bank records and a U.S. Postal Service analyst who also worked on the investigation were qualified witnesses who could authenticate the records); *United States v. Gordon*, 2019 WL 4303046, at *11  (D. Me. Sept. 11, 2019) ("Special Agent Thresher can describe Bancorp's record-keeping system based upon his personal observations. His status as a government agent does not negate his personal knowledge.").

Rule 803(6) "favors the admission of evidence rather than its exclusion if it has any probative value at all." *In re Ollag Constr. Equip. Corp.*, 665 F.2d 43, 46 (2d Cir. 1981), quoting *United States v. Carranco*, 551 F.2d 1197, 1200 (10th Cir. 1977); *United States v. Kaiser*, 609 F.3d 556, 574 (2d Cir. 2010). Moreover, "[b]ecause of the general trustworthiness of regularly kept records and the need for such evidence in many cases, the business records exception has been construed generously in favor of admissibility." *Conoco Inc. v. Dep't of Energy*, 99 F.3d 387, 391 (Fed. Cir. 1996).

The Court finds that the 61 job file exhibits meet the requirements of Rule 803(6) with Agent Baer as a "qualified witness." The Defendant objects to the testimony of Special Agent Baer at trial because his testimony as a "qualified" witness under 803(6)(D) would be "based largely, if not entirely, on hearsay" and therefore inadmissible. (Def. Reply at 2.) The Government has identified, however, many sources of Special Agent Baer's knowledge regarding the nature and maintenance of the Sierra job files beyond his interviews with Sierra employees. (*See* Gov. Resp. at 22-23.) Special Agent Baer was the affiant on the search warrant and personally witnessed the seizure of the files. Indeed, law enforcement agents have been permitted to testify under 803(6)(D) with less direct basis for their knowledge of the way the records were kept than Special Agent Baer has had. *See Hathaway*, 798 F.2d at 906 (6th Cir. 1986); *Franco*, 874 F.2d at 1138 (7th Cir. 1989); *Coffman*, 574 Fed. Appx. at 556 (6th Cir. 2014); *Gordon*, 2019 WL 4303046, at *11.

Accordingly, Defendant's Motion (ECF Nos. 73, 74) is **DENIED** as to the business records exception to the hearsay rule.

## II. Rule 16 and *Brady* violation (ECF No. 83)

On the evening of September 26, 2021, the night before the Motions Hearing, the Defendant filed a letter, supported by exhibits, claiming that the Government had made yet another belated pretrial disclosure of documents and arguing that the material disclosed constituted material in violation of *Brady v. Maryland,* 373 U.S. 83, 87 (1963)[4].  (ECF No. 83.) These documents consist of a Memorandum of Interview conducted with Gary Howser of the Cumberland Post Office as well as some 60 Sierra job-related files from the Cumberland Post office.  Defendant informed the Court that he was not seeking a postponement of the trial date, but asked the Court to preclude the Government from calling Mr. Howser as a witness and to exclude the Cumberland job files and Howser Memorandum of Interview from the evidence to be presented at trial.  The Government responded to the Defendant's letter on September 27, 2021, arguing that the material was not exculpatory and was therefore not *Brady* material.  (ECF No. 85.)  The Court shall construe the Defendant's letter (ECF No. 83) as a Motion for Sanctions pursuant to *Brady* and Rule 16 of the Federal Rules of Criminal Procedure.  For the reasons set forth on the record at the September 27, 2021 hearing and as supplemented below, the Defendant's motion is GRANTED.

In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution."  *See also United States v. Agurs*, 427 U.S. 97, 106-07 (1976); *Gilliam v. Sealey*, 932 F.3d 216, 238 (4th Cir. 2019); *United States v. Young*, 916 F.3d 368, 382 n.9 (4th Cir. Feb. 21, 2019); *United States v. Horton*, 693 F.3d 463, 470 (4th Cir. 2012).

---

[4] *See Brady* dicussion *infra.*

To prove a *Brady* violation, a defendant must show that non-disclosed evidence was (1) favorable to the defendant; (2) material; and (3) that the prosecution had the materials and failed to disclose them. *Moore v. Illinois*, 408 U.S. 786, 794–95 (1972). Evidence is "material" when there is a reasonable probability that, had the evidence been disclosed, the result of the proceedings would have been different. *Burley v. Balt. Police Dep't*, 422 F. Supp. 3d 986, 1027 (D. Md. 2019). *See also Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995); *United States v. Bagley*, 473 U.S. 667, 682 (1985); *United States v. Parker*, 790 F.3d 550, 558 (4th Cir. 2015); *United States v. Bartko*, 728 F.3d 327, 340 (4th Cir. 2013); *United States v. Kelly*, 35 F.3d 929, 936 (4th Cir. 1994).

As noted by the United States Court of Appeals for the Fourth Circuit in *United States v. Robinson*, 627 F.3d 941, 951 (4th Cir. 2010), "*Brady*'s commands do not stop at the prosecutor's door; the knowledge of some who are part of the investigative team is imputed to prosecutors regardless of the prosecutors' actual awareness." *Accord Kyles*, 514 U.S. at 437 ("[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf, including the police.").

In addition, Rule 16 of the Federal Rules of Criminal Procedure requires the government to disclose to the defendant "books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and ... the item is material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i). Upon finding a violation of Rule 16, a district court has discretion under the Federal Rules of Criminal Procedure to determine the proper remedy. *See* Fed. R. Crim. P. 16(d)(2); *United States v. McLean*, 715 F.3d 129, 142 (4th Cir. 2013); *United States v. Barile*, 286 F.3d 749, 758-59 (4th Cir. 2002); *United States v. Muse*, 83 F.3d

672, 675 (4th Cir. 1996) ("[A] trial court's decision as to the appropriate remedy [for a discovery violation] may only be reversed for abuse of discretion.").

This is not the first time this Court has had to intervene as a result of belated discovery productions by the Government in this case.  The record reflects that on June 22, 2021, just days before the July 7 trial date, this Court held an on-the-record telephone conference with the parties to address submissions related to the Government's recent re-production of Sierra job files which included several additional documents that had only been noticed during preparation for trial.  (ECF No. 60.)  This Court treated the Defendant's letter at ECF No. 58 as a request for the postponement of the July 7 trial date and granted that request.  The trial is now scheduled to begin on October 5, 2021.

The evening before the motions hearing and pretrial conference scheduled for September 27, 2021, the Defendant filed a letter with the Court stating that on September 23, 2021, less than two weeks before the start of trial, the Government produced 631 pages of documents that included a February 2018 Memorandum of Interview with Gary Howser[5], the maintenance manager at the Cumberland Post Office, as well as files concerning 60 Sierra jobs maintained by the Cumberland Post Office.  (ECF No. 83 at 1-2.)  The letter explained that counsel for the Government represented that they only learned of the records Mr. Howser maintained for the Cumberland jobs following a trial preparation session with Mr. Howser. The Letter also explained that the most of the documents had been provided to Special Agent

---

[5] At the September 27, 2021 hearing, Government counsel acknowledged that all other memoranda of interview as to witnesses had been disclosed to Defendant in February of 2020 with the exception of two which were disclosed in July of 2021.  The Howser memorandum of interview was the only memorandum of interview disclosed last week.

Baer in February 2018.  (*Id.* at 3.)  The materials contain an additional 20 files that Special Agent Baer obtained from Mr. Howser last week following the preparation session.  The letter also indicated that the Government still intended to call Mr. Howser as a witness at trial.  (*Id.* at 9.)  The Government contended that the material is not exculpatory, but did not address the Rule 16 concerns. (ECF No. 85.)

As this Court explained on the record at the September 27, 2021 hearing, the documents in question are *Brady* material and their belated disclosure violates Rule 16 of the Federal Rules of Criminal Procedure as well as this Court's Scheduling Order.[6]

The documents in question are favorable to the Defendant because they could support his argument that there was a legitimate reason for Sierra to instruct its subcontractors not to leave pricing information at local postal facilities that was unrelated to any fraud.  The Amended Superseding Indictment alleges that as "part of the conspiracy and the scheme to defraud," the Defendant "instructed and caused other Sierra employees to instruct subcontractors that they should not leave copies of their proposals, estimates, or invoices with postal employees at the facilities where they performed their repair work."  (ECF No. 65 ¶ 31(c).)  The Defendant, however, points to two examples from the Government's production of the Cumberland files that support his position that any such instruction had no relation to fraud.  (ECF No. 83 at 4.)  In both examples, Mr. Howser's records reflect frequent contacts between Sierra subcontractors and the Cumberland Post Office, including an interaction in which a Sierra subcontractor sent its proposal to the Postal Service, the result of which was a

---

[6] The Court notes that this violation is not the result of any misconduct on the part of Government counsel. It clearly relates to errors of Government investigators.

stream of phone calls and emails to straighten out the resulting confusion and clarify that the Postal Service does not in fact pay the bill for Sierra's subcontractor.  (ECF No. 83-5.)  The Defendant asserts that this file is evidence of the "entirely innocent" reason why Sierra would tell a subcontractor not to leave quotes and invoices with customers at local post offices: to avoid confusion as to who would pay the subcontractor.  (*Id.*)

This Court agrees that the materials could support the Defendant's argument as to the possibility of a legitimate reason for instructing subcontractors not to leave pricing information with local post offices.  While the Government argues that evidence that one subcontractor failed to heed Sierra's instruction is not evidence that that instruction was not part of a plan to overbill, such an argument does not erase the exculpatory nature of the documents in question.  Instead, it goes to arguments about the files that the Government would have been free to make to the jury at trial.

The documents in question are likewise material to the Defendant because, as stated above, they cut against one of the central allegations in the indictment: that the Defendant instructed Sierra subcontractors not to leave pricing information with local postal facilities to facilitate a scheme to defraud.

The documents were also in the possession of the Government.  Agent Baer has possessed the Howser Memorandum of Interview and *at least* 40 Cumberland job files since February 2018, yet they were only turned over to the Defendant on the eve of trial following a witness preparation session with Mr. Howser.  As the cases cited above make clear, the knowledge of an investigating agent acting on behalf of the Government can be imputed to the prosecution in the *Brady* context. *See, e.g.*, *Robinson*, 627 F.3d 941, 951.  Since the documents

16

are favorable to the Defendant, material to his defense, and were in the possession of the Government, they constitute *Brady* material and their belated disclosure is unacceptable to this Court. Therefore, Defendant's September 26, 2021 Letter (ECF No. 83), construed as a Motion for Sanctions under Federal Rule of Criminal Procedure 16, this Court's Scheduling Order, and *Brady v. Maryland*, 373 U.S. 83 (1963) is **GRANTED**. To remedy the Government's *Brady* violation, the Court will preclude the Government from calling Mr. Howser at trial and from introducing into evidence at trial the 631 pages from the Government's September 23, 2021 production, including the Howser Memorandum of Interview and Cumberland job files.

This Court has also determined that the belated disclosure of the documents in question is a violation of Federal Rule of Criminal Procedure 16 and this Court's Scheduling Order. The Cumberland documents clearly fall within the realm of information that Rule 16(a)(1)(E)(i) governs because they are documents that were in the control of the Government and, as this Court has stated above, are material to the preparation of the defense in this case. This Court will exercise its discretion to order the same remedy it has ordered for the *Brady* violation: precluding the Government from calling Mr. Howser as a witness at trial and from introducing into evidence at trial the 631 pages from the Government's September 23, 2021 production, including the Howser Memorandum of Interview and Cumberland job files

### III.    Jury Venire Vaccination Status (ECF No. 84)

Defendant has objected to the Court asking the jury venire's COVID-19 vaccination status during voir dire. (ECF No. 84.) As explained on the record at the September 27, 2021 hearing, asking the vaccination status of potential jurors is in keeping with this Court's policy

in the face of the COVID-19 Pandemic.  Accordingly, Defendant's objection is **OVERRULED**.

## CONCLUSION

For the reasons stated on the record at the September 27, 2021 Motions Hearing, and for the reasons stated above, Defendant's Motion Addressing Legal Principles Governing Admissibility of Job File Exhibits (ECF Nos. 73, 74) is DENIED WITHOUT PREJUDICE as to the authenticity of specific exhibits and DENIED as to the business records exception to the hearsay rule. Defendant's September 26, 2021 Letter (ECF No. 83), construed as a Motion for Sanctions under Federal Rule of Criminal Procedure 16, this Court's Scheduling Order, and *Brady v. Maryland*, 373 U.S. 83 (1963) is GRANTED; and the Government is precluded from calling Gary Howser as a witness at trial and from introducing into evidence at trial the 631 pages from the Government's September 23, 2021 production, including the Howser Memorandum of Interview and Cumberland job files.  In addition, the Defendant's objection to the Court asking the jury venire's vaccination status during voir dire (ECF No. 84) is OVERRULED.

A separate Order follows.

Dated: September 29, 2021                    _____/s/_____
                                             Richard D. Bennett
                                             United States District Judge