IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

|  |  |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Crim. No. RDB-19-0600 |
| JOSEPH EDWARD LIBERTO, | |
| *Defendant.* | |

## RULE 29 MOTION FOR JUDGMENT OF ACQUITTAL

Defendant, Joseph Liberto, by his undersigned counsel and pursuant to Federal Rule of Criminal Procedure 29, moves for a judgment of acquittal on all counts of the Amended Superseding Indictment, ECF No. 65.[1]

## LEGAL STANDARD

"The test for deciding a motion for a judgment of acquittal is whether there is substantial evidence . . . which, taken in the light most favorable to the prosecution, would warrant a jury finding that the defendant was guilty beyond a reasonable doubt." *United States v. MacCloskey*, 682 F.2d 468, 473 (4th Cir. 1982). In other words, the district court must "view the evidence in the light most favorable to the prosecution, and inquire whether a rational trier of fact could [find] the essential elements of the charged offense beyond a reasonable doubt." *United States v. Singh*, 518 F.3d 236, 246 (4th Cir. 2008). "While all inferences must be made in favor of the prosecution, leaps of logic should not be." *Evans-Smith v. Taylor*, 19 F.3d 899, 908 n.22 (4th Cir. 1994). "Where

---

[1] The primary grounds for the motion are set forth in this written motion, drafted before the government concluded its case. Mr. Liberto reserves the right to supplement the motion. The motion is address to all counts, but as the Court requested, it focuses on specific counts regarding which there are grounds for relief aside from those applicable to all counts.

. . . the trier of fact would have . . . to rely on attenuated inferences [to make a finding] . . . the finding . . . cannot stand." *United States v. Hickman*, 626 F.3d 756, 763 (4th Cir. 2010).

Even taking the evidence in the government's favor, it has failed to prove Counts 2-9, 11-12, 14-18, 21, and 23-32 of the Amended Superseding Indictment. In oral argument in support of this motion, without waiving Mr. Liberto's motion for acquittal on each and every element of Counts 2-9, 11-12, 14-18, 21, and 23-32, the defense will draw the Court's attention to certain specific deficiencies in the government's proof.[2]

## A. THE EVIDENCE IS INSUFFICIENT TO SUSTAIN A CONVICTION ON THE COUNTS INVOICED AS FIRM FIXED PRICE.

Mr. Liberto move for a judgement of acquittal on all counts in the Amended Superseding Indictment based on firm fixed price jobs. For the reasons set forth in Mr. Liberto's pretrial motion to dismiss and supporting memoranda, ECF Nos. 21, 21-1, 35, he seeks a judgment of acquittal on the charges or a judgment of acquittal for Counts 5-8, 11-12, 14-16, 23, 25, 27-29 and 31-32, which are based on firm fixed price jobs. As set forth in Defendant's motion to dismiss, and as supported by trial testimony regarding the contractual provisions in the EMCOR-Sierra supplier agreements, there is insufficient evidence to sustain a conviction for all counts for which the proposed, approved and invoiced amount is over $2,000. ECF Nos. 21, 21-1, 35.[3]

---

[2] As set forth in Defendant's motion to strike, ECF No. 20, and reply in support thereof, ECF No. 33, incorporated herein by reference, Mr. Liberto also contends that there is insufficient evidence to support the inclusion of EMCOR as a victim, given the testimony and documentary evidence that it was not deprived of money or property. He therefore asks the Court to strike EMCOR as a victim of the alleged scheme to defraud or, failing that, to dismiss all counts on the ground that there is insufficient evidence of a scheme to defraud EMCOR of tangible property. We rely on the papers submitted in furtherance of our motion to strike, ECF Nos. 20, 33, and the evidence at trial that the only money at stake was the Postal Service's money.

[3] On August 10, 2020, Defendant filed his motion to dismiss seeking dismissal of Counts 5-8, 11-12, 14-15, 23, 25, 27-29 and 31, each of which were firm-fixed price jobs for more than $2,000. *See* ECF No. 21-1. On April 1, 2021, the government superseded the indictment, adding Count 32, after Defendant's motion to dismiss had been filed, and therefore it was not included in

Mark Grist, General Manager of EMCOR, testified that EMCOR's contract provisions, set forth in its standard form work orders, *e.g.*, DX008, specify that all work orders over $2,000 were to be treated as firm fixed price jobs.  Grist Tr. T6-AM-24:11-19. Mr. Grist also testified that for firm-fixed price jobs, the contractor agrees to perform the work described for the agreed-upon price and is entitled to payment in that amount even if the labor hours required to perform the work are less or more than the proposed number of hours to complete the job. Grist Tr. T5-PM-70:8-24.

Additionally, Postal Service facilities engineer Steven Young testified that under USPS' agreement with EMCOR (the terms of which are the basis for EMCOR's agreement with Sierra), for firm-fixed priced jobs, Sierra was entitled to payment in the full amount of its approved proposals, regardless of whether actual costs deviated from the approved proposal. Young Tr. T7-AM-35:21 – 38:16, 41:2 – 42:6.[4]  Postal Service Team Lead Patty James also testified that approved firm-fixed price proposals should be invoiced for the approved amount, and that was the price that the Postal Service was required to pay. James Tr. T7-PM-24:1-4.

The testimony also established that under the EMCOR-Sierra supplier agreements and the parties' course of dealing, jobs performed on an emergency basis were deemed firm-fixed. Grist Tr. T6-AM-26:12-25. Emergency jobs are those jobs for which the work order was assigned a P4 or P5 priority level and there was an approved proposal. *See* Fink Tr. 286:16 – 287:10 (explaining that EMCOR emailed work order update requests for emergencies included P4 and P5); DX341-DX346 (EMOCR work order updates treating P4 and P5 as emergency jobs); Fink Tr. 287:11 – 288:6 (explaining that USPS Facilities Engineers assigned a P4 work order as an emergency);

---

Defendant's motion. Count 32 was proposed fixed firm for $2,580.00, and was approved and paid as proposed, and therefore, should also be dismissed.

[4] Mr. Young also confirmed that the Postal Service did not require subcontractor proposals to be submitted with for firm fixed jobs. Young Tr. T7-AM-48:13 – 49:6.

DX456. Counts 2-4, 9, 17-18, 21, 26 and 30 are P4 or P5 emergency jobs for which there was an approved proposal, and therefore, these jobs were treated as firm fixed price under the contract. *See* EX02a; EX03a; EX04a; EX09a; EX17a; EX18a; EX19a; EX20a; EX21a; EX26a; EX30a.

For all counts that arise from firm-fixed jobs because they are emergencies with approved proposals (Counts 2-4, 9, 17-18, 21, 26 and 30), and for counts that are based on firm fixed jobs because the work order exceeded $2,000 (Counts 5-8, 11-12, 14-16, 23, 25, 27-29 and 31-32), the firm-fixed job analysis in Defendant's motion to dismiss applies and Mr. Liberto should be acquitted of these Counts.[5]

### B. THE EVIDENCE IS INSUFFICIENT TO SUSTAIN A CONVICTION ON COUNTS THAT ARE BASED ON ALLEGED NON-DISCLOSURE OF SIERRA'S USE OF SUBCONTRACTORS BECAUSE THE GOVERNMENT DID NOT PROVIDE SUFFICIENT EVIDENCE OF CONCEALMENT OF SUBCONTRACTORS.

There is insufficient evidence to sustain a conviction as to all counts that are based on non-disclosure of Sierra's use of subcontractors. Mr. Liberto seeks a judgment of acquittal for all counts except those that were self-performed or for which a Bob's Bucket Truck or Cox's Rental invoice was used. Counts 2-9, 11-12, 14-18, 23, and 25-32 allege that Sierra "did not disclose the use of a subcontractor" in carrying out repair work at Postal Service facilities. *See* Amended Superseding Indictment pp. 16-24.

Government witnesses from the Postal Service, Steven Young and Patty James, testified that they were aware that Sierra used subcontractors on Postal Service jobs. Young T6-PM-72:2-6 (Mr. Young testified that Sierra had a "very good relationship" with the Postal Service and he was aware that Sierra used subcontractors.); Young Tr. T7-AM-72:12-20, 78:9-24 (aware that Sierra used subcontractors for HVAC work, including Ironhorse Mechanical, and EMCOR HVAC

---

[5] Mr. Liberto excludes counts for which there is a Bob's Bucket Truck or Cox Rental invoice.

supplier); DX410 (email communication between Sierra and the Postal Service regarding Sierra's subcontractor Ironhorse Mechanical on site at the Postal Service facility); Young Tr. T7-AM-75:6 – 76:25 (aware that Sierra used subcontractor Stanley Door); DX219 (email communication between Sierra and the Postal Service regarding Stanley Door invoice left at Postal Service facility that matched the work that Sierra had invoiced for); Young Tr. T7-AM-80:9-17, 81:8-10 (aware that Sierra used an electrical subcontractor); DX485 (email communication between Sierra and the Postal Service regarding Sierra's use of an electrical subcontractor); Young Tr. T7-AM-83:9 – 84:2 (discussing communications between Postal Service facilities, Postal Service project managers and Sierra, noting Sierra's use of subcontractors); DX488 (email communication between Postal Service facility site contact and Postal Service Project Manager Young and Sierra acknowledging Sierra's use of a sub).

Postal Service Team Lead Patty James testified that she knew that Sierra was a general contractor who "pulls together from its own resources and from outside resources from subcontractors, depending on the nature of the job, whatever is needed to do the job." James Tr. T7-PM-14:10-16. Ms. James testified that she was aware that Sierra used subcontractors for electrical, plumbing, and HVAC, among other areas, and she did not question Sierra's use of subcontractors. James Tr. T7-PM-15:12 – 16:9. Ms. James also testified that subcontractors left their invoices at Postal Service facilities "all the time" and that it caused confusion because she had to make sure that the facility did not pay the invoice. James Tr. T7-PM-29:15 – 30:5. Ms. James testified regarding an example where Sierra's subcontractor left its invoice at the Postal Service facility, after which the facility contacted Ms. James, who then contacted EMCOR, who contacted Sierra, to handle payment with the subcontractor. James Tr. T7-PM-30:6 – 33:1. Sierra

did not deny using a subcontractor and the Postal Service raised no concerns with Sierra's use of a subcontractor even though it did not identify the subcontractor on its invoice. *Id.*

For two specific counts, the evidence disproves non-disclosure. For Count 25, the evidence just six days before Sierra submitted its proposal for Count 25, it informed EMCOR of the status of the job: "asphalt contractor to visit site week of 4/16." DX 94.[6] The evidence cannot support a finding of concealment on that count. For Count 3, the government's basis for Count 3 is Sierra's job file for the Work Order No.35277735 (Dulles P&DC), Exhibit 3a, Kevin Fink. Fink Tr. 274:9 – 279:14, 280:9-13. But Kevin Fink identified a three-page email string between Sierra and subcontractor Overhead Door—not in the original job file or the copy offered by the government, that "reflects that [the subcontractor] Overhead Door's work order was signed by the Postal Service and they may or may not have kept a copy of what they signed before giving it back."[7] EX03a, EX03c; Fink Tr. 276:3 – 280:13; DX460 at 4-7. The role of the subcontractor was well known to the Postal Service.

### C. THE EVIDENCE IS INSUFFICIENT TO SUSTAIN A CONVICTION ON COUNTS FOR WHICH THERE IS NO BASIS FOR THE JURY TO FIND THAT SIERRA CHARGED MORE THAN IT WAS ENTITLED TO UNDER THE CONTRACT.

The Amended Superseding Indictment alleges that Mr. Liberto "fraudulently inflate[d] the number of hours worked, and the costs of materials used, by both its subcontractors and its own

---

[6] DX94 will be put into evidence through Agent Baer during trial on Monday, October 20, 2021.

[7] On, June 22, 2021, the government produced EX03a, USA-019259, and represented that it was a complete copy of the original file seized from Sierra's office during the execution of a search in November 2018.  Another version of EX03a was used in the Grand Jury as Grand Jury Exhibit No. 7. DX460 (introduced at Fink Tr. 274:16-20). At trial, Mr. Fink was shown EX03a and DX460 (Grand Jury Exhibit No. 7), and confirmed that both documents are copies of the job file for Work Order No.35277735 (Dulles P&DC). Fink Tr. 275:21 – 276:2. Mr. Fink also confirmed that copy of the file used in the grand jury (DX460) contained a three-page email string between Sierra and Amber Young of Overhead Door, that was not included in trial exhibit EX03a, the file used to support Count 3. Fink Tr. 276:3 – 280:13; DX460 at 4-7.

employees on invoices submitted for payment in connection with USPS repair projects assigned to Sierra by EMCOR." Indict. at ¶¶ 31(d), 31(g).  The Amended Superseding Indictment also alleges that Mr. Liberto "falsely added trip fees to proposals and invoices in connection with repair projects assigned to Sierra, and instructed and caused Sierra's PMs to do the same, where no Sierra employees actually traveled to the postal facility in connection with the initial assessment or completion of the assigned repair work." Indict. at ¶¶ 31(f). *See also id.* ¶ 30(a) (alleging concealment of subcontractors "to enable Sierra to substantially increase its revenues from repair projects" and to enable "Sierra to submit bills for its supposed services at rates that were both far in excess of the amount the subcontractor or subcontractors were charging it, and also far in excess of the specified mark-up that would otherwise have been allowed"); ¶ 30(c) (on self-performed jobs, alleging that Sierra "overcharge[d] for its services by fraudulently inflating the number of labor hours used to complete the work and by fraudulently marking up the cost of the materials used in completing its assigned work on these jobs."). The evidence introduced regarding Counts 8, 12, 14, 23, 24, 29 and 32, construed in the light most favorable to the government, cannot support a jury finding that Sierra intended to or did overcharge.[8]

### 1.  Count 8

Mr. Wineke, the project manager assigned to this job, Work Order No. 33305631 (Baltimore Nottingham Branch), testified to his belief that two Sierra employees, Randy Smith

---

[8] The evidence is not sufficient to permit the jury to find that the value of the work of Sierra and its techs on any job was less than the amount Sierra was paid. Kevin Fink testified that for jobs before Sierra's techs started using time tickets and a tracking spreadsheet for assigned work orders in 2016, there was no way to tell whether a tech worked on a job. He agreed that "you don't have enough – the files don't contain everything that you need in order to determine the nature of the transaction." Fink Tr. 227:22 – 228:10. He also agreed that "even after 2016 there might be a job file that doesn't have a ticket, a tech time ticket, on which a tech worked," and that his prior "testimony about all of these job files then was inaccurate . . . because [he wasn't] thinking about the time tickets." Fink Tr. 228: 15 – 229:2.

and Shawn Rice, were on site to assist the welding subcontractor, John Blankenship. Mr. Wineke reviewed photographs of the job, DX022-25; DX027, Sierra's technician assignment tracking sheet, DX205, and related email communications, DX033, and testified that the job required assistance from Sierra's technicians. Wineke Tr. T8-PM-39:1 – 45:14. He explained that Mr. Blankenship was a welder who needed assistance from Sierra techs on more substantial jobs on which he worked, like this one. *See* Wineke Tr. T8-PM-38:12-16. This evidence stands uncontradicted.

### 2.   Count 12

Evidence was presented that established that Sierra tech Randy Smith worked in Covington, VA, on the work orders that are the subject of this count. Wineke Tr. T8-PM-47:20 – 54:19; DX040; DX040.1; Mr. Wineke testified that the painting subcontractor, Saul & Sons, was not capable of doing large drywall patches, such as those required for the interior component of this job. T8-PM-50:19-25 – T8-PM-54:19. Mr. Wineke testified that a Sierra technician, Randy Smith, and another Sierra employee, went to the job site in Covington, VA for at least two days— to take photographs for the initial survey and troubleshooting, and also to do interior drywall patching and repair. Wineke Tr. T8-PM-47:20 – 54:19; EX12a; DX205.

### 3.   Count 14

The evidence established that Sierra technicians Kevin Justice and Shawn Rice first went to the site to survey the job on October 26th but were not able to speak with point of contact. Wineke Tr. T8-PM-73:07-22. They made a second return trip to survey the issues so that Mr. Wineke could evaluate what the job would entail. *Id*. at T8-PM-74:01 – 75:15; (Sierra technicians

Kevin Justice and Shawn Rice returned to the site on November 11 to survey the site and take necessary photographs of the work needed); DX205 at p. 5 (Sierra technician tracking spreadsheet); DX041-42 (photographs of fencing needing repairs taken on site no later than November 11).

### 4. Count 23

The evidence establishes that Kevin Justice and Shawn Rice were on site in Warrenton, VA, in connection with this job involving the restoration of entrance doors and windows in a historic Postal Service facility. *See* Wineke Tr. T8-PM-61:17 – 70:2; EX23b (photograph of Sierra technician, Shawn Rice, on site at the Warrenton, VA facility for survey photograph documentation); DX091 (email from Sierra to Sierra technician Kevin Justice with work order for Warrenton, VA facility job). Mr. Wineke testified that Sierra uses its own technicians to the extent possible, and would have used its technicians for the necessary plaster work before the subcontractor could perform its component of the job. Wineke Tr. T8-PM-63:14 – 64:4.

### 5. Count 24

The government's own evidence establishes that Sierra did not use a subcontractor for any part of this Hampton, VA job, but instead sent its tech, Russell Gittman, to Hampton, VA to perform the work. The government's examination of its witnesses suggest that it contends that Sierra should not have had one of its techs drive four or more hours to replace what turned out to be a small sign, a task that could have been accomplished more efficiently by hiring a local contractor. The government's questions further appeared intended to suggest that Sierra charged both the Church of Jesus Christ of Ladder Day Saints and the Postal Service for the techs' travel to Richmond, VA after completing this job, a contention that it has indicated was not its contention. The government's overbilling claim for Count 24 amounts to no more than an allegation of double-

billing, or performing a job inefficiently by sending its own tech to Hampton rather than hiring a local subcontractor. Neither is sufficient for the jury to convict on this count.  Fink Tr. 223:20.

### 6.   Count 29

Kevin Fink and Agent Baer both testified that Sierra employees performed work for Work Order No. (Washington Lamond Riggs Station). Their testimony and the exhibits, including notes in job files, email communications, the technician tracking spreadsheet and photographs from Sierra's business records, establish that  Irvin Delauter traveled to Washington to survey the job, and that Kevin Justice, possibly with Shawn Rice, separately met the subcontractor in Washington to remove and then reinstall hardware on a glass door. Fink Tr. 229:3 – 231:17; 232:8 – 234:17; 238:6 – 241:25; 247:3-23; DX104; DX105; DX111; DX112; DX205. Agent Baer acknowledged evidence of this work and testified that he did not consider any work done by Sierra techs in his analysis of the job, and that work by Sierra techs should have been included. Baer Tr. T10-PM-3:3-9, 3:21 – 14:3; EX29a (references to Sierra technician Irvin on front cover), DX111 (survey conducted by Sierra technician Irvin); DX112 (email communication between Postal Service, Sierra, JR Willis Glass discussing that Sierra technician Kevin Justice would be installing mag locks). He conceded that if he had reviewed the documentation of Sierra employees' work on the job (DX111 and DX112), he would not have included the two trip charges and the initial labor charges in fraud calculation. Baer Tr. T10-PM-254:19 – 25:13. There is simply no basis for the jury to find any overbilling, actual or intended, on this job.

### 7.   Count 32

The evidence establishes that when this emergency work order was received on a Sunday, Mike Wineke contacted Sierra tech Russell Gittman, who traveled from Frederick to Dundalk and managed to turn off the water supply to a constantly flushing toilet; Mr. Wineke contacted Scott

Graczkowski of plumbing subcontractor Castaway Plumbing to arrange for him to go to the site the next day for permanent repairs; and contacted EMCOR or the Postal Service to obtain the necessary authorization. Castaway performed the work as requested. The government's carping about the cost of a Sunday repair an hour from Frederick is no substitute for evidence of overcharging.

## CONCLUSION

For the foregoing reasons and for the reasons stated in oral argument on Mr. Liberto's Rule 29 motion, the defense respectfully requests that the Court enter a judgement of acquittal on Counts 2-9, 11-12, 14-18, 21, and 23-32 of the Amended Superseding Indictment.

Dated:  October 20, 2021

*/s/ Martin S. Himeles, Jr.*
Martin S. Himeles, Jr. (Bar No. 03430)
Alicia L. Shelton (Bar No. 11538)

ZUCKERMAN SPAEDER LLP
100 East Pratt Street – Suite 2440
Baltimore, MD 21202
Tel No: 410-332-0444
Fax No: 410-659-0436
mhimeles@zuckerman.com
ashelton@zuckerman.com

*Counsel for Defendant Joseph Liberto*

## CERTIFICATE OF SERVICE

I certify that on October 20, 2021, I caused copies of the foregoing Rule 29 Motion for

Acquittal to be served via the CM/ECF system on:


        Jefferson M. Gray
        Matthew Phelps
        Assistant United States Attorneys
        Office of the U.S. Attorney
        36 S. Charles Street – 4th Floor
        Baltimore, MD 21201

        Jefferson.M.Gray@usdoj.gov
        Matthew.Phelps@usdoj.gov



                                        */s/ Martin S. Himeles, Jr.*
                                        Martin S. Himeles, Jr.